641 A.2d 562

IN MATTER OF THE ORDER OF THE COMMISSIONER OF IN-SURANCE DATED OCTOBER 19, 1992 DEFERRING CERTAIN CLAIM PAYMENTS BY THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION.

IN MATTER OF THE ORDER OF THE COMMISSIONER OF IN-SURANCE DATED NOVEMBER 9, 1992 DEFERRING CERTAIN CLAIM PAYMENTS BY THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION.

HYACENTH WALCOTT, APPELLANT, v. NEW JERSEY AUTOMO-BILE FULL INSURANCE UNDERWRITING ASSOCIATION AND THE COMMISSIONER OF INSURANCE, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 26, 1994—Decided May 17, 1994.

---

*Michael Gordon* argued the cause for appellants, Association of Trial Lawyers of America–New Jersey and Walcott (*Gordon & Gordon,* attorneys; *Mr. Gordon* and *Lisa Sessa Ebert,* on the brief).

*B. Stephan Finkel,* Deputy Attorney General, argued the cause for respondent Commissioner of Insurance (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Finkel,* on the brief).

*Hugh P. Francis* argued the cause for respondent New Jersey Automobile Full Insurance Underwriting Association (*Francis & Berry,* attorneys; *Mr. Francis,* of counsel; *Peter A. Olsen,* on the brief).

Before Judges SKILLMAN, KESTIN and WEFING, JJ.

The opinion of the court was delivered by

KESTIN, J.A.D.

We have previously recounted the history and procedural background of this matter. *In re Order of Comm'r of Ins. Deferring Certain Claim Payments, etc.,* 256 *N.J.Super.* 553, 607 *A.2d* 992 (1992). Pursuant to our remand therein for compliance with the notice and hearing requirements of the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –21, the Commissioner of Insurance (Commissioner), on October 19, 1992, adopted an order authorized in the Fair Automobile Insurance Reform Act of 1990, *N.J.S.A.* 17:33B–3b(2), deferring for twelve months payments for residual bodily injury losses reflected in claims against the New Jersey Automobile Full Insurance Underwriting Association (JUA). Simultaneously with efforts to perfect the procedure leading to that deferral, a new eighteen-month deferral period for subsequent claims was being implemented. It was adopted in the Commissioner's order of November 9, 1992. The appeals filed from the adoption of both orders were consolidated.

Appellants jointly challenge the constitutionality of the Commissioner's orders on four grounds. They argue further that the Commissioner has failed to comply with APA notice requirements for the public hearing on a proposed rulemaking, and with those APA provisions mandating that all interested or affected persons be afforded reasonable opportunity to make submissions to be

fully considered by the adopting agency. Our review of the record and the arguments advanced by the parties discloses that the issues raised are without merit. Accordingly, we affirm.

We discern no proper basis for invalidating the orders on the basis of the equal protection guarantees embodied in the Fourteenth Amendment to the United States Constitution and article I, paragraph 1 of the New Jersey Constitution. Appellants have not argued that an invalid classification occurred when all persons with claims against the JUA for residual bodily injury were identified as a class warranting particularized treatment. Certainly, there has been no disparity of treatment within the class. All persons with claims against the JUA for residual bodily injury losses are treated in the same fashion. Whether they elect to settle or avail themselves of their right to a jury trial, payment of that portion of the recovery which reflects compensation for residual bodily injury is to be deferred. An equal protection violation does not exist in the absence of disparate treatment of persons who are or ought to be considered to be members of the same class. *Gregory v. Ashcroft,* 501 *U.S.* 452, 470–73, 111 *S.Ct.* 2395, 2406–08, 115 *L.Ed.*2d 410, 430–32 (1991); *Brady v. New Jersey Redist. Comm'n,* 131 *N.J.* 594, 610–11, 622 *A.*2d 843 (1992).

No federal or state due process violation has been made out, either. The factual background which we depicted in previously addressing this matter, *In re Order of Comm'r, supra,* 256 *N.J.Super.* at 555–559, 607 *A.*2d 992, highlights the critical financial condition of the JUA. Given the crisis at hand, it is clear that the means chosen to deal with it, deferral of payment for certain types of claims, is reasonable, *i.e.,* designed as a principled method of addressing the problem and clearly having the capacity to achieve the result sought, here, some release of the immediate fiscal pressures facing the JUA. Where a coordinate branch of government has adopted reasonable measures designed to achieve a permissible governmental objective and seemingly having the capacity to do so, the judicial branch will not substitute its judgment for that of the legislative or executive by invalidating

the choices made. *Ferguson v. Skrupa,* 372 *U.S.* 726, 730, 83 *S.Ct.* 1028, 1031, 10 *L.Ed.*2d 93, 97 (1963); *City of Newark v. Natural Resource Council,* 82 *N.J.* 530, 539–40, 414 *A.*2d 1304 *cert. denied,* 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.*2d 245 (1980).

■ Appellants argue that other means less onerous than those adopted were available, and should have been implemented. In order to carry the day on this argument, appellants must first establish the existence of a right or interest of special or fundamental significance before restrictions on legislative or executive choice will be imposed. *Hobby v. United States,* 468 *U.S.* 339, 346, 104 *S.Ct.* 3093, 3097, 82 *L.Ed.*2d 260, 267 (1984); *In re American Reliance Ins. Co.,* 251 *N.J.Super.* 541, 552, 598 *A.*2d 1219 (App. Div.1991), *certif. denied,* 127 *N.J.* 556, 606 *A.*2d 369 (1992). They must then establish either that the means chosen unduly interfere with the special right or interest so as to render invalid the contemplated reach of governmental action, *Roe v. Wade,* 410 *U.S.* 113, 155, 93 *S.Ct.* 705, 728, 35 *L.Ed.*2d 147, 178 (1973); *Greenberg v. Kimmelman,* 99 *N.J.* 552, 564, 494 *A.*2d 294 (1985), or that there is an effective lack of telic relationship between the means chosen and the end to be achieved. *Cf. Nebbia v. New York,* 291 *U.S.* 502, 525, 54 *S.Ct.* 505, 510–11, 78 *L.Ed.* 940, 950 (1933); *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 *N.J.* 55, 68–69, 159 *A.*2d 97 (1960). No such showings have been made here.

■ It is further contended that the orders at issue also amount to impairments of the obligation of contracts, proscribed to the states by Article I, § 10 of the United States Constitution. Since all JUA settlements (contracts) after promulgation of the orders under review are expressly conditioned upon deferral of payments for residual bodily injury losses, we see no basis for appellant's contention that the State has impaired any contractual obligation it may owe to persons who have contracted with it. *See United States Trust Co. of N.Y. v. New Jersey,* 431 *U.S.* 1, 97 *S.Ct.* 1505, 52 *L.Ed.*2d 92 (1977). Nor has there been established any adequate basis for concluding, as appellants contend, that the orders under review unduly impair the rights of contracting

private parties with each other in some special way that has survived the passage of time and the development of due process protections since the United States Supreme Court's decision in *Fletcher v. Peck*, 10 *U.S.* (6 *Cranch* ) 87, 3 *L.Ed.* 162 (1810). *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 *U.S.* 398, 439–40, 54 *S.Ct.* 231, 240–41, 78 *L.Ed.* 413, 429–30 (1934). We note in passing that application of the contract impairment clause is to be characterized by flexibility. *See, e.g., Allied Structural Steel Co. v. Spannaus*, 438 *U.S.* 234, 240, 98 *S.Ct.* 2716, 2720, 57 *L.Ed.*2d 727, 733–34 (1978); *State Farm Mut. Auto. Ins. Co. v. State*, 124 *N.J.* 32, 64–65, 590 *A.*2d 191 (1991).

■ Appellants also raise the takings clauses of the Fifth Amendment to the United States Constitution and article I, paragraph 20 of the New Jersey Constitution but without clearly articulating what existing property right has been taken, to what public use the property has been put or how it has been over-regulated into effective inutility, or, even more basically in the context of the subject matter of this case, how a delay of payment with interest can be seen as equivalent to a deprivation. *In re "Plan for Orderly Withdrawal from New Jersey" of Twin City Fire Ins. Co.*, 129 *N.J.* 389, 413–20, 609 *A.*2d 1248 (1992), *cert. denied sub nom. Twin City Fire Ins. Co. v. Fortunato*, ⸺ *U.S.* ⸺, 113 *S.Ct.* 1066, 122 *L.Ed.*2d 370 (1993).

■ Finally, appellants argue, based upon perceived requirements of the APA, that a sixteen-day notice of the public hearing on the proposed twelve-month deferral was inadequate. Appellants also argue they were entitled to fuller disclosure of information available to the Commissioner so that they might have determined with greater certainty what alternative means were available to those the Commissioner chose for dealing with the JUA crisis, thereby affording appellants a more effective opportunity to make their views and preferences known.

■ The focus on the thirty-day notice provision of *N.J.S.A.* 52:14B–4(a)(1) is misplaced. That provision establishes the mini-

mum notice period for the entire process in a rulemaking, not just the portion consumed by the public hearing requirement. The last sentence of *N.J.S.A.* 52:14B–4(a)(3) is the governing provision for the public hearing phase of the process. This requires at least fifteen days notice. Since sixteen days notice was provided here, there has been no violation of that aspect of the APA.

Appellants' argument concerning their right to information available to the Commissioner assumes a process resembling discovery in a civil action. We can discern no adequate basis in the cited portion of the APA, *ibid.,* or any other, upon which to posit any such requirement in respect of a rulemaking.

Affirmed.