902 A.2d 287

ZSIGMOND L. SAGI, PLAINTIFF–RESPONDENT, v. BORBALA M. SAGI, DEFENDANT, AND BRAE ASSET FUND, L.P., INTERVENOR–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 6, 2005—Decided July 18, 2006.

Before Judges COBURN, COLLESTER and LISA.

*Ostrowitz & Ostrowitz,* attorneys for appellant (*Alan R. Ostrowitz,* of counsel; *Martha D.F. Ostrowitz,* on the brief).

*Zsigmond L. Sagi,* respondent pro se.

Respondent Borbala M. Sagi has not filed a brief.

The opinion of the court was delivered by

COLLESTER, J.A.D.

Brae Asset Fund, L.P. (Brae), intervenor in the matrimonial action of Zsigmond L. Sagi (Mr. Sagi) v. Borbala M. Sagi (Mrs. Sagi), appeals the May 26, 2005, order of the Family Part judge following our earlier remand in which the judge reaffirmed his May 24, 2004, order making permanent restraints ordered on December 30, 2003. That order directed any funds paid by Mr. Sagi to Brae "shall be immediately forwarded to defendant's attorneys" to satisfy an "Order of Execution and Levy of Judgment" imposed on December 11, 2003, specifying that all of Mr. Sagi's assets were to be delivered in satisfaction of judgments and his obligations to Mrs. Sagi consistent with the August 8, 2003, judgment for separate maintenance.

The procedural history of this case can only be described as labyrinthian. It begins with a July 10, 1990, $479,900 mortgage loan from Citizen's National Bank secured by the marital home at

25 Arden Road in Denville, where Mrs. Sagi still lives, and which Mr. and Mrs. Sagi own as tenants by the entirety. After the loan fell into default, Brae as the assignee of Citizens National filed a foreclosure action and recorded a final judgment of $578,826.38 on February 13, 2001. However, the Chancery judge found that Mrs. Sagi's signature on the note and mortgage was a forgery. Therefore, the final judgment of foreclosure covered only Mr. Sagi's interest in the Denville home.[1] Mrs. Sagi was awarded damages against Mr. Sagi in the amount of $1 compensatory damages and $100,000 punitive damages. Brae sued Mr. Sagi in the Law Division for a money judgment in the amount adjudged due and owing in the foreclosure action. Although Mr. Sagi defaulted, the Law Division judge declined to enter judgment, holding that Brae had to effect a sheriff's sale of Mr. Sagi's interest and then seek judgment for the deficiency. Brae filed an appeal which was subsequently withdrawn on May 26, 2004.

Meanwhile, a separate action was proceeding in the Family Part. Mr. Sagi filed a complaint for divorce in February 1998, and Mrs. Sagi counterclaimed for divorce. On July 28, 2003, Brae obtained an order permitting leave to intervene in the dissolution action. Two days later, on July 30, 2003, the dissolution hearing took place. Mr. Sagi did not appear and his complaint was dismissed.[2] Mrs. Sagi was permitted to orally amend her counterclaim to seek a judgment of separate maintenance, which the Family Part judge granted. After hearing the proofs submitted by Mrs. Sagi, the judge entered a judgment directing Mr. Sagi to pay $8,000 per month in support and maintenance for Mrs. Sagi as

---

[1] The appellate record does not indicate that any criminal charges were made against Mr. Sagi.

[2] Throughout the convoluted proceedings it was repeatedly stated that Mr. Sagi was a "fugitive" and that there was an active warrant for his arrest which presumably emanated from the Family Part judge. We note that Mr. Sagi filed a respondent's brief in this matter as well as the earlier appeal later withdrawn by Brae. Colloquy from Mrs. Sagi's attorney in the matrimonial action indicates Mr. Sagi is Chief Executive Officer of Scantek Medical, Inc., which is actively traded on the Over–The–Counter Bulletin Board.

well as paying the mortgage and taxes on the marital residence. Mr. Sagi also was restrained from disposing or transferring any marital assets including the marital residence. Finally, the judge entered a monetary judgment in favor of Mrs. Sagi and against Mr. Sagi for $134,751.78, representing alimony arrears of $41,000 and real estate tax arrears of $93,751.78. The judgment provided that,

> The defendant may submit a Judgment providing that all assets owned by the plaintiff, including stocks and stock options, in the name of plaintiff and in which he has interest, shall be held by defendant's attorney for purposes of satisfying by levy and sale existing judgments and obligations of the plaintiff to the defendant, as well as future support obligations of the plaintiff to the defendant.

A month later, on September 5, 2003, Brae filed a motion as intervenor to amend the judgment for separate maintenance "to clarify [that] the defendant's receipt of $93,751.78 for tax arrears be dependent upon satisfaction of the taxes due." Counsel for Brae certified that a tax foreclosure proceeding was pending and that while the monetary judgment of $134,751.78 awarded to Mrs. Sagi included a tax arrearage, the judgment did not require Mrs. Sagi to pay the tax liability from any such sums she received from Mr. Sagi. Brae argued that as a result, its security and lien position was severely jeopardized if the taxes were not timely redeemed and Brae, as mortgagee, would then have to pay the tax liability and seek recoupment of the tax amount from Mr. Sagi. Therefore, Brae sought an amendment of the separate maintenance judgment to specify that the amount necessary to redeem the real estate taxes be turned over to the Denville Township tax collector directly rather than including that amount as part of the judgment payable to Mrs. Sagi.

Although Brae's motion regarding payment of the real estate taxes was filed on September 3, 2003, the order denying Brae relief was not entered until June 14, 2004. That order stated the following:

> The court denies Brae Asset's most recent application as it determines that Defendant has no obligation to pay the real estate taxes on the marital premises by using funds which may become available to her. Whether Defendant chooses to apply such funds to such purposes is her option. Defendant has no obligation to make any payments which even incidentally benefit ... Brae Asset. Based on the above, Brae Asset's application is denied.

Brae next scheduled the sheriff's sale of the marital premises for September 29, 2003. It was at this point that Mr. Sagi appeared through an attorney, Z. Lance Samay, Esq., who tele-faxed Brae's attorneys on September 22, 2003, stating Mr. Sagi's interest in satisfying the mortgage debt. Brae adjourned the sale, and several weeks later reached a settlement whereby Brae would not have the marital home sold at sheriff's sale if Mr. Sagi paid $250,000 by January 2, 2004, which would resolve the mortgage debt and satisfy the judgment of foreclosure.

However, if Mr. Sagi did not pay the amount by January 2, 2004, a deficiency judgment would be entered against him on the entire indebtedness with additional interest and costs. Brae then filed a complaint in the Law Division on December 23, 2003, accompanied by the signed agreement, stipulation of settlement, an acknowledgement of service and a consent order for entry of the deficiency judgment. The consent order was signed by a Law Division judge on January 7, 2004.

About the time Brae's complaint was filed, Mrs. Sagi "received a tip" that Mr. Sagi was going to pay $250,000 to discharge the mortgage. On December 30, 2003, she applied ex parte without notice to Brae on an order to show cause and obtained a tempo-rary restraining order specifying, "All funds, in whatever amount, paid or about to be paid by the plaintiff or his agent to Brae Asset Fund, shall be immediately forwarded to the defendant's attor-neys" to satisfy the December 11, 2003, order of execution and levy of judgment.

The initial hearing on the order to show cause and continuation of restraints was held on January 9, 2004, before the same Family Court judge who had heard the separate maintenance action. The judge expressed his suspicion that Brae was "in cahoots" with Mr. Sagi in an effort to avoid making payments of the monetary judgment to Mrs. Sagi in the separate maintenance judgment.[3]

---

[3] During the argument the Family Court judge implied that the conduct of Brae's attorneys was in some respect unethical because they had filed a second

Brae's attorneys attempted to explain their concern that Mr. and Mrs. Sagi might be conspiring to evade payment of the $250,000 settlement amount by requiring Brae to funnel the money to Mrs. Sagi without any obligation on her part to pay either the mortgage or the taxes. The judge then ordered that the restraints entered were to continue and further ordered funds held by Mr. Sagi's attorney, Mr. Samay, were to be submitted to Mrs. Sagi. The judge directed that the attorneys for Brae Asset and Mr. Sagi provide Mrs. Sagi's attorney "full cooperation regarding any information and/or documents" relating to the pending settlement of the action by Brae against Mr. Sagi. The judge continued the restraints in an order following Brae's application for re-argument on April 30, 2004, and reaffirmed them in an "order disposing of all outstanding motions" dated June 4, 2004. Brae appealed from these orders, and we reversed based on the failure of the Family Part judge to comply with *R.* 1:7–4. Noting that the judge's findings of fact were cursory and his conclusions of law inadequate for proper review, we added,

> No finding is made as to whether or when any judgment obtained by Brae or defendant was levied upon. It appears that the trial court found that defendant's support and maintenance judgment bears priority over any judgment obtained by Brae against plaintiff, but the reasons for such [a] finding are not clearly expressed.

Following a hearing after our remand, the judge entered an order reaffirming the restraints and all requirements of his previous order of May 24, 2004, as continued in his subsequent orders.

Noting that the real estate taxes were the subject of Brae's application to require Mrs. Sagi to make payment, were in fact paid by "an unidentified person," presumably Mr. Sagi or someone on his behalf, the judge declared the issue moot. He then gave the following reasons for continuing the permanent restraints of his May 24, 2004, order:

---

suit in the Law Division against Mr. Sagi while the first was still on appeal. The judge's comments were unfortunate and unjustified. The record clearly shows Brae's attorneys acted responsibly and properly.

Initially, the Court notes that it is the strong public policy of this State to give priority to judgments, writs or court orders involving support and maintenance of wives or children over *other forms of judgments* secured in a commercial setting. *See e.g., N.J.S.A.* 2A:17–12. While it may be true that counsel for Brae Asset does not actually have physical possession of the fugitive's assets, the Court's order initially entered on December 30, 2003, by Order to Show Cause and made permanent thereafter, in the May 24, 2005, order imposes upon Brae and obligation to turn over such assets as may come into possession in the future through any mechanism of payment by the fugitive Sagi.

Mr. Sagi has made a mockery of several Court orders entered in the matter. He continues to flaunt the Court, make payments as and when he wishes and is attempting to negotiate a settlement with Brae, which *prima facie* would involve the transfer of assets owned or controlled by Mr. Sagi. These assets should *first* be utilized to satisfy his matrimonial obligations owed to Mrs. Sagi.

The Court notes that the Judgment entered in this action in favor of Mrs. Sagi pre-dates any judgment secured by Brae Asset in connection with this matter. Under the inherent equitable powers of this Court, the Orders entered previously by the Court compelling Brae Asset to turn over such assets represent a reasonable and necessary exercise of the discretionary power of the Court to enforce its Orders.

We reverse. First, the December 30, 2003, order to show cause obtained on an ex parte basis without notice was improvidently entered. *R.* 4:52–1(a) permits a court to enter restraints without notice only in the exceptional case where "it appears from specific facts shown by affidavit or verified complaint that immediate and irreparable damage will probably result to the [applicant] before notice can be served or informally given and a hearing had thereon." In her application, Mrs. Sagi acknowledged that Mr. Sagi was required by the separate maintenance judgment to pay the mortgage on the marital premises and that the payment of funds pursuant to the stipulation of settlement between Brae and Mr. Sagi would "satisfy the foreclosure against my home." Satisfaction of the debt and cancellation of the mortgage on the marital residence where she lived would benefit Mrs. Sagi as opposed to causing her irreparable injury. The consequence of the restraints entered against Brae is that the mortgage lien remains in place and encumbers the title to the property. On the other hand, the permanent restraints entered by the Family Part judge eviscerate Brae's security by crippling its efforts to satisfy the mortgage lien. Since the mortgage and note are valid only as to Mr. Sagi, Brae is effectively and permanently restrained from enforcing any defi-

ciency judgment against him. That is, by the terms of the permanent restraint, any funds collected by Brae from Mr. Sagi or paid on his behalf would have to be funneled to Mrs. Sagi, who in turn by the court's order would not be obliged to use the monies to pay the mortgage debt or the real estate taxes while remaining in the residence.

Furthermore, the imposition of the restraints against Brae's collection of its mortgage obligation is contrary to laws of this State governing lien priority. The basic rule of lien priority in New Jersey is "first in time, first in right." *Fidelity Union Title & Mtg. Guar. Co. v. Magnifico*, 106 *N.J. Eq.* 559, 562, 151 *A.* 499 (Ch.1930) (holding that priority of liens whether by mortgage or judgment is governed by the date of acquisition); *United Jersey Bank/South v. Camera*, 271 *N.J.Super.* 387, 638 *A.*2d 913 (App.Div.1994); *N.J.S.A.* 2A:17–52. Here Brae's mortgage lien dates from May 3, 1990, and defendant's judgment for separate maintenance was entered on August 8, 2003. A lien created to enforce a judgment of support and maintenance is governed by *N.J.S.A.* 2A:34–24, which provides that "such lien shall have priority from the time of the proper filing or recording." Moreover, *N.J.S.A.* 2A:17–52 directs that for liens owed to a *debtor* "where more than one execution shall be issued ... against the same judgment debtor, they shall be satisfied in the order of priority in which such executions are presented." The only exception is when an execution on a support and maintenance judgment is presented on the same day as another execution, which is not the case here. *See N.J.S.A.* 2A:17–52. Despite the caption in the court's December 11, 2003, order for execution and levy of judgment filed on December 12, 2003, there has been no execution by Mrs. Sagi on any assets of her husband while Brae has foreclosed the mortgage on the property and delivered a writ of execution to the sheriff pursuant to *N.J.S.A.* 2A:17–15.

The Family Court judge based his permanent restraint against Brae's effective collection of its mortgage debt upon the "inherent equitable powers of the court to enforce its Orders," i.e., the

judgment for separate maintenance. The result effectively extinguishes Brae's mortgage lien without payment. Since the permanent restraint is tied to Mr. Sagi's continuing obligation to support his wife under the judgment for separate maintenance, Brae's mortgage on Mr. Sagi's interest in the property is permanently subordinated to the judgment for separate maintenance since Brae has no practical method to collect the deficiency judgment against Mr. Sagi while any provision of the separate maintenance judgment remains unsatisfied. Such a result is hardly equitable.

In *Freda v. Commercial Trust Co.*, 118 *N.J.* 36, 49, 570 *A.2d* 409 (1990), our Supreme Court held that where an innocent bank granted a mortgage on realty based on the husband's forgery of the wife's signature, the bank's claim would not be defeated by a subsequent transfer of the realty to the wife as equitable distribution in a divorce proceeding. *See also Interchange State Bank v. Riegel,* 190 *N.J.Super.* 139, 143–44, 462 *A.2d* 198 (App.Div.1983). While we do not dispute that a Family Court judge has broad equitable powers in enforcing its orders, it cannot upset or limit the prior lien of an innocent mortgagee. There was no inherent equitable power to transform Brae from a mortgagee to a collection agency for Mrs. Sagi.

We reverse the orders of the Family Court of May 24, 2004, June 4, 2004 and May 26, 2005, and dissolve the restraints as improvidently granted.

Reversed.