961 A.2d 1207 (2008)
404 N.J. Super. 382
Leonard FELICIONI, Plaintiff-Appellant,
v.
ADMINISTRATIVE OFFICE OF the COURTS, the Honorable Phillip Carchman, J.A.D., in His Capacity as the Administrative Director of the Courts, Harvey M. Goldstein, in His Capacity as the Manager of the Intensive Supervision Program, and the State of New Jersey, Defendants-Respondents.
DOCKET NO. A-2716-07T1.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 2008.
Decided December 15, 2008.
*1210 Donald M. Doherty, Jr., argued the cause for appellant (Friedman Doherty, L.L.C., attorneys; Mr. Doherty, Sander D. Friedman and Wesley G. Hanna, of counsel and on the brief).
Alyson R. Jones, Deputy Attorney General, argued the cause for respondents (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Deputy Attorney General, of counsel; David B. Bender, Deputy Attorney General, on the brief).
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
At issue is the manner in which restitution payments are processed and distributed to crime victims by the State. Appellant Leonard Felicioni, a victim of criminal fraud to whom payment of restitution was court-ordered, launches a multi-faceted challenge to the State's current system of paying restitution on a first-in-time rather than automatic pro-rata basis. He argues that this method of distribution violates his substantive due process and equal protection rights under the federal and State constitutions, as well as his State constitutional rights under the Victims Rights Amendment (VRA), N.J. Const., art. I, ¶ 22, and his statutory rights under New Jersey's Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -70, and Civil Rights Act, N.J.S.A. 10:6-1 to -2. For the following reasons, we disagree.
By way of background, Felicioni was a victim of a fraudulent scheme perpetuated by Michael Cervini, a used car salesman. Cervini accepted cars from Felicioni on consignment and sold them to third parties without conveying good title or paying Felicioni. *1211 Cervini eventually pled guilty to third-degree theft by deception, N.J.S.A. 2C:20-4, and, on November 1, 2004, was sentenced to a four-year prison term and ordered to pay Felicioni restitution in the amount of $16,200 through either the New Jersey Department of Corrections (DOC) or the Atlantic County Probation Department.
There were multiple victims of Cervini's criminal scheme, each supporting a separate prosecution of Cervini. As such, eight convictions preceded the instant one involving Felicioni, and eleven followed. Each judgment of conviction included a separate restitution order specific to the loss incurred by the particular victim involved. All totaled, Cervini was ordered to pay $95,317.32 in restitution to twenty victims, including Felicioni.
In each case, restitution was ordered pursuant to N.J.S.A. 2C:44-2, which provides, in pertinent part:
b. The court shall sentence a defendant to pay restitution in addition to a sentence of imprisonment or probation that may be imposed if (1) The victim ... suffered a loss ...; (2) The defendant is able to pay or, given a fair opportunity, will be able to pay restitution.
c. ... (2) In determining the amount and method of payment of restitution, the court shall take into account all financial resources of the defendant, including the defendant's likely future earnings, and shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay. The court shall not reduce a restitution award by any amount that the victim has received from the Violent Crimes Compensation Board, but shall order the defendant to pay any restitution ordered for a loss previously compensated by the Board to the Violent Crimes Compensation Board. If restitution to more than one person is set at the same time, the court shall set priorities of payment.
. . . .
[N.J.S.A. 2C:44-2 (emphasis added).]
After mandating restitution in criminal matters where the established pre-conditions are satisfied, the Legislature left the timing and method of payment essentially to the discretion of the court. Thus, N.J.S.A. 2C:46-1 states, in relevant part:
a. When a defendant is sentenced to. . . make restitution, the court may grant permission for the payment to be made within a specified period of time or in specified installments. If no such permission is embodied in the sentence, the assessment, fine, penalty, fee or restitution shall be payable forthwith, and the court shall file a copy of the judgment of conviction with the Clerk of the Superior Court....
b. (1) When a defendant sentenced to... make restitution is also sentenced to probation, the court shall make continuing payment of installments on the assessment and restitution a condition of probation.....
[N.J.S.A. 2C:46-1.]
Ordinarily, the Probation Division of the Judiciary's Administrative Office of the Courts (AOC) is charged statutorily with the responsibility of collecting court-imposed financial obligations, N.J.S.A. 2A:168-11, and when a criminal defendant remains incarcerated, restitution payments are processed by the DOC.[1] Here, however, *1212 because as a non-violent offender Cervini was found eligible for, and enrolled in, the Judiciary's Intensive Supervision Program (ISP), a program operated by the AOC and designed as an intermediate form of punishment  less costly than prison but more onerous than traditional probation  the ISP oversees the collection of his court-imposed financial obligations, including fines and restitution. ISP reinforces its collection efforts by requiring its participants to maintain gainful employment and to develop a budget and payment plan.[2]
Whether monitored and enforced by either ISP or the Probation Division, the procedure for collecting restitution is governed by the Model Collection Process, approved by the AOC as of September 22, 1997. Pursuant thereto, where there are multiple convictions, assessments are to be paid off chronologically, by the date of the restitution order. All assessments for the earliest conviction are to be collected and disbursed first, before moving on to the next-in-time judgment of conviction. Following recent review and approval of the Model Collection Process by the Conference of Chief Probation Officers, the AOC ratified the first-in-time policy of payment on January 25, 2007, maintaining its prior practice of having all financial penalties and obligations associated with the oldest disposition paid completely before any money is disbursed on the next-oldest disposition. This policy is now embodied in the Probation Supervision Manual. Although not listed in the manual, when multiple restitution orders are issued against a criminal defendant on the same day, chronological entry is not possible, and, therefore, the restitution orders are processed based on the date of the indictment with which each is associated, with the earliest indictment being entered first. It is only when a court specifically so orders, or there are multiple victims listed on the same restitution order, that restitution payments will be distributed on a pro-rated basis. However, the pro-rated distribution only pertains to that particular indictment.
As noted, each of Cervini's victims was the subject of a separate restitution order, which, together, totaled $95,317.32. These separate restitution orders were scheduled for payment in chronological order of entry, based on the Model Collection Process. Felicioni was the ninth victim in order of priority. As of August 1, 2007, Cervini had completed restitution payments totaling $18,487.34, completely paying five victims of his crimes and in the process of paying the sixth. Fourteen other victims awaited payment of restitution, including Felicioni, who, by then, was third in line to be paid. Cervini continued to pay his court-mandated restitution orders on time at an average rate of $745 per month.
Felicioni filed the instant class action complaint against the State of New Jersey, the AOC and its Acting Director, and the Director of the ISP (collectively the State or defendants), seeking declaratory and equitable relief to invalidate the State's serial payment scheme in favor of pro-rata distributions, mandated, he claimed, under both the federal and State constitutions, *1213 and the New Jersey Civil Rights Act, which also entitled him to counsel fees. On the State's motion for summary judgment, the Law Division judge dismissed Felicioni's complaint with prejudice, finding as a matter of law, no violation of substantive due process, equal protection, the VRA or the Civil Rights Act. We agree.

(i)

Substantive Due Process
The thrust of Felicioni's substantive due process claim is that the indeterminacy of, or delay in payment occasioned by the State's first-in-time policy arbitrarily interferes with his "property right," as a crime victim, to the court-ordered restitution, by diminishing the value of his monetary interest. We disagree.
The principle of substantive due process, founded in the federal Constitution, U.S. Const. amend XIV, § 1, and our State Constitution, N.J. Const. art. I, § 1, protects individuals from the "arbitrary exercise of the powers of government" and "governmental power being used for the purposes of oppression." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L. Ed.2d 662, 668 (1986). However, the constitutional guarantee "does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law." Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 366, 671 A.2d 567 (1996) (quoting PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir.), cert. granted, 502 U.S. 956, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991), and cert. dismissed, 503 U.S. 257, 112 S.Ct. 1151, 117 L.Ed.2d 400 (1992)). Rather, substantive due process is reserved for the most egregious governmental abuses against liberty or property rights, abuses that "shock the conscience or otherwise offend ... judicial notions of fairness ... [and that are] offensive to human dignity." Rivkin, supra, at 366, 671 A.2d 567 (citing Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir.1989)).
Correspondingly, if the challenged governmental restriction is seen to have a relation to a proper legislative purpose, and is "neither arbitrary nor discriminatory, the requirements of substantive due process are satisfied, and judicial determination to that effect renders the court functus officio." Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 562, 350 A.2d 1 (1975). In this regard, in determining whether a claimed right is entitled to protection as a matter of substantive due process, a court looks to the traditions and collective conscience of our citizenry to determine whether a principle is so rooted there as to be ranked fundamental. Lewis v. Harris, 378 N.J.Super. 168, 183, 875 A.2d 259 (App. Div.2005), aff'd in part and modified in part, 188 N.J. 415, 908 A.2d 196 (2006).
Thus, simply arguing, as Felicioni does here, that pro-rata distribution is a fairer policy, does not carry the day. Instead, to prevail, Felicioni must first establish the existence of a right or interest of special or fundamental significance before restrictions on governmental choice will be imposed. Hobby v. United States, 468 U.S. 339, 346, 104 S.Ct. 3093, 3097, 82 L. Ed.2d 260, 267 (1984); IMO Order of the Comm'r of Ins. v. N.J. Auto. Full Underwriting Ass'n, 273 N.J.Super. 181, 187, 641 A.2d 562 (App.Div.1994); In re Am. Reliance Ins. Co., 251 N.J.Super. 541, 552, 598 A.2d 1219 (App.Div.1991), certif. denied, 127 N.J. 556, 606 A.2d 369 (1992). He must then establish either that the means chosen unduly interfere with the special right or interest so as to render invalid the contemplated reach of governmental action, Roe v. Wade, 410 U.S. 113, 155, 93 *1214 S.Ct. 705, 728, 35 L.Ed.2d 147, 178 (1973); Greenberg v. Kimmelman, 99 N.J. 552, 564, 494 A.2d 294 (1985), or that there is an effective lack of a rational relationship between the means chosen and the end to be achieved. Hutton Park Gardens, supra, 68 N.J. at 562, 350 A.2d 1; IMO Order of the Comm'r of Ins., supra, 273 N.J.Super. at 187, 641 A.2d 562. No such showing has been made here.
We discern no fully vested property right to immediate restitution payment from a criminal defendant. By legislative prescription, a sentencing court may only order restitution upon a determination of a present or future ability of the criminal defendant to pay. On this score, the Legislature clearly and expressly recognized that restitution may not make the crime victim entirely whole and therefore provided that the amount of restitution shall be set to give the victim "the fullest compensation for loss that is consistent with the defendant's ability to pay [restitution]." N.J.S.A. 2C:44-2(c)(2). Elsewhere, in the 1985 Crime Victim's Bill of Rights, the Legislature reiterated that crime victims shall "be compensated for their loss whenever possible." N.J.S.A. 52:4B-36(i) (emphasis added). Correspondingly, the Legislature conferred on the victim the right to seek payment only upon a failure of the criminal defendant to pay restitution and, even then, subjected the victim's right to judicial review of the defendant's "good cause" for missing payment. N.J.S.A. 2C:46-2. Moreover, the Legislature allowed for alternatives to restitution designed to accomplish the same objective of the court-imposed financial obligation including imposing a "term of imprisonment or participation in a labor assistance program or enforced community service," and taking "appropriate action to modify or establish a reasonable schedule for payment...." Ibid.
Thus, the legislative purpose of restitution is not merely remunerative but encompasses rehabilitative, deterrence and punitive goals, as well. State v. Pulasty, 259 N.J.Super. 274, 283, 612 A.2d 952 (App.Div.1992), aff'd, 136 N.J. 356, 642 A.2d 1392 (1994). Indeed, to the extent it is a condition of continuing probation, N.J.S.A. 2C:46-1(b), restitution is predominantly rehabilitative in design and victim compensation necessarily secondary. State v. Harris, 70 N.J. 586, 591-92, 362 A.2d 32 (1976). Of course, these features are not necessarily mutually exclusive. "[C]ompensatory payments made pursuant to a restitution order `can have correctional worth, regardless of whether the offender is required only to disgorge the fruits of his offense or to compensate persons for the injuries and losses suffered as a result of his crime.'" State v. DeAngelis, 329 N.J.Super. 178, 186, 747 A.2d 289 (App. Div.2000) (quoting In re Parole Application of Trantino, 89 N.J. 347, 358, 446 A.2d 104 (1982)). In Pulasty, supra, we distinguished criminal restitution from a civil judgment, which is intended to make the victim whole, noting that "the purpose of restitution is to strip a defendant of pecuniary gain from the crime where that gain is directly related to the crime itself and the defendant has the ability ... to pay." 259 N.J.Super. at 283, 612 A.2d 952. "Like punishment, rehabilitation and deterrence, the other aims of criminal restitution, disgorgement of the ill-gotten gain is a far reaching goal quite distinct from the traditional compensatory rationale of the civil law." Id. at 283-84, 612 A.2d 952.
Thus, the very nature of a restitution determination under N.J.S.A. 2C:44-2  namely that it must be in an amount a defendant can reasonably afford, State v. Rhoda, 206 N.J.Super. 584, 591-92, 503 A.2d 364 (App.Div.), certif. denied, 105 N.J. 524, 523 A.2d 167 (1986), and serves *1215 multiple objectives in addition to victim remuneration  argues compellingly against finding any guarantee of full reimbursement, much less any reasonable expectation of immediate payment.
Even assuming a legally cognizable property interest in restitution, Felicioni has not proven any deprivation. Cervini, who remains under the strict supervision of the ISP, continues to make timely restitution payments and, as of the dismissal of his complaint, Felicioni stands just third in line. Throughout, the initial restitution judgment remains in full force and effect. N.J.S.A. 2C:46-1.
Moreover, there are statutory safeguards for crime victims in the event of a criminal defendant's default. For instance, a court may take "other measures... for collection of [restitution] or the unpaid balance thereof as are authorized for the collection of an unpaid civil judgment entered against the defendant in an action on a debt[,]" N.J.S.A. 2C:46-2, "and the victim may institute summary collection proceedings authorized by subsection (b) of this section." Ibid. Alternatively, the victim may seek civil recovery based on the incident underlying the criminal conviction. N.J.S.A. 2C:44-2(f). And, finally, the victim has the opportunity to be heard as to the manner of distribution of the restitution payments. Thus, a sentencing judge, in the exercise of discretion, may order a different priority based on the amount of restitution owed to, or the financial circumstances of, the requesting recipient, or may even order that restitution payments be disbursed regardless of the recipient's individual circumstances on a pro-rata basis. Here, of course, Felicioni has demonstrated neither default nor recourse to alternative remedies, and, therefore, no deprivation of a property interest has been shown.
Nevertheless, Felicioni argues the delay in payment alone impermissibly interferes with his property right. Simply put, we do not view the mere deferral of payment to be of constitutional dimension. Felicioni cites to no relevant authority and, in fact, our research discloses support for the opposite principle. See, e.g., IMO Order of the Comm'r of Ins., supra, 273 N.J.Super. at 187-88, 641 A.2d 562.
In any event, given the responsibility of the judiciary to fix the method and timing of payment, N.J.S.A. 2C:44-2, the means chosen for disbursement  and the consequent built-in delay occasioned by that determination  are reasonably designed to achieve the legitimate governmental objective of full reimbursement to those first-in-time, consistent with a defendant's ability to pay. Indeed, setting the order of payment based on temporal considerations is a rational government choice and aligns with public policies setting payment priorities in other contexts. See, e.g., N.J.S.A. 2A:17-52 (The basic rule of lien priority in New Jersey is "first in time, first in right)." Sagi v. Sagi, 386 N.J.Super. 517, 525, 902 A.2d 287 (App.Div.2006) (citing Fidelity Union Title & Mtg. Guar. Co. v. Magnifico, 106 N.J. Eq. 559, 562, 151 A. 499 (Ch.1930) (holding that priority of liens whether by mortgage or judgment, is governed by the date of acquisition)); United States v. City of New Britain, 347 U.S. 81, 85-86, 74 S.Ct. 367, 370, 98 L. Ed. 520, 525-26 (1954) (The relative priority of federal tax liens, with other liens, absent statutory authority to the contrary, is governed by the principle "`first in time, first in right.'"); N.J.S.A. 46:21-1 ("The recording act policy [is] that a first-in-time interest in realty has priority)." Chase Manhattan Bank v. Josephson, 135 N.J. 209, 248, 638 A.2d 1301 (1994) (Garibaldi, J., dissenting).
*1216 It also constitutes reasonable administrative practice inasmuch as the first-in-time policy is convenient and efficient to administer and avoids the presumably more complex and costly management of a pro-rata restitution distribution policy. Clearly, the policy is neither intended nor designed to "oppress" crime victims similarly situated to Felicioni. Being neither arbitrary nor unreasonable, the judiciary's first-in-time policy violates neither federal nor State due process.

(ii)

Equal Protection
Nor is the policy impermissibly discriminatory. We discern no proper reason for invalidating the restitution order in this case on the basis of the equal protection guarantees embodied in the Fourteenth Amendment to the United States Constitution and article I, paragraph 1 of the New Jersey Constitution. An equal protection violation does not exist in the absence of disparate treatment of persons who are or ought to be considered to be members of the same class. Gregory v. Ashcroft, 501 U.S. 452, 470-73, 111 S.Ct. 2395, 2406-08, 115 L.Ed.2d 410, 430-32 (1991); Brady v. N.J. Redist. Comm'n, 131 N.J. 594, 610-11, 622 A.2d 843 (1992). Here, all victims with restitution claims against criminal defendants are subject to the same payment prioritization, are deferred in the same fashion, and may avail themselves of the same alternative remedies in the event of default.
Even assuming, however, disparity of treatment within the class, there is no equal protection violation. Under federal equal protection analysis, a statute which, on its face, "neither burdens a fundamental right nor targets a suspect class," is upheld "so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855, 865 (1996). New Jersey employs a slightly different analysis, utilizing a more flexible balancing test that weighs the nature of the right at stake, the extent to which the challenged statutory scheme restricts that right, and the public need for the statutory restriction. Lewis, supra, 188 N.J. at 433, 908 A.2d 196; Greenberg, supra, 99 N.J. 552, 567, 494 A.2d 294. Despite the different approaches, "the [two] tests weigh the same factors and often produce the same result." Sojourner v. Dep't. of Human Servs., 177 N.J. 318, 333, 828 A.2d 306 (2003).
Here, there is no equal protection violation under either test. We have already established that a crime victim has no fundamental right to receive restitution, much less receive it in a particular manner, i.e., on a pro-rata basis. See N.J.S.A. 2C:44-2(b) (providing for restitution to be awarded in a particular case on terms that are a matter of the court's discretion); State v. Newman, 132 N.J. 159, 172-177, 623 A.2d 1355 (1993). Equally clear is that the State's first-in-time policy neither targets nor is based on a suspect classification such as race, religion or national origin. Therefore, the policy need only have a rational relationship to a legitimate governmental end. And on this score, we are satisfied that, as noted, the policy of satisfying the restitution orders from prior convictions is rationally related to, and has the capacity to achieve, the declared legislative goal of paying the earliest victims the "fullest compensation for loss that is consistent with the defendant's ability to pay." N.J.S.A. 2C:44-2.

(iii)

VRA
New Jersey's constitutional and statutory law provide for victims' rights. *1217 Thus, the Victim's Rights Amendment states:
A victim of a crime shall be treated with fairness, compassion and respect by the criminal justice system. A victim of a crime shall not be denied the right to be present at public judicial proceedings except when, prior to completing testimony as a witness, the victim is properly sequestered in accordance with law or the Rules Governing the Courts of the State of New Jersey. A victim of a crime shall be entitled to those rights and remedies as may be provided by the Legislature....
[N.J. Const., art. I, ¶ 22.]
The essential concept is "fairness to the victim." State v. Muhammad, 145 N.J. 23, 43, 678 A.2d 164 (1996). In Muhammad, the Court stated "[u]nlike most interpretations of constitutional provisions, we need not surmise what the founders intended when they drafted the Victim's Rights Amendment. We know exactly what the founders of this constitutional amendment intended  fair treatment for victims." Id. at 42-43, 678 A.2d 164.
Its statutory counterpart, the Crime Victim's Bill of Rights, entitles victims to certain rights, including the right to compensation for their loss, "whenever possible." N.J.S.A. 52:4B-36(i). Neither of these provisions, however, guarantees the right to full, much less immediate, payment. Nor do they require that the method of disbursement be on a pro-rata basis. In fact, the VRA does not even address restitution.
Felicioni argues, however, that the Bill of Rights' provision aimed at minimizing the "inconveniences associated with participation in the criminal justice process," N.J.S.A. 52:4B-36(d), somehow mandates pro-rata distribution of restitution payments. Yet there is no evidence of such legislative intent. Rather, the "inconvenience" has reference primarily to trial venue, not victim remuneration, as made clear in State v. Timmendequas, 161 N.J. 515, 737 A.2d 55 (1999), cert. denied, 534 U.S. 858, 122 S.Ct. 136, 151 L.Ed.2d 89 (2001), wherein the Court, based on both the VRA and the Bill of Rights, held that the inconvenience of the victim should be considered when determining proper venue for a criminal trial. Id. at 557, 737 A.2d 55.
To be sure, the Bill of Rights does address victim compensation, but, consistent with N.J.S.A. 2C:44-2(c), adds the qualification "whenever possible," N.J.S.A. 52:4B-36(i), an obvious reference to the criminal defendant's ability to pay and clearly in recognition of judiciary policy setting payment priority. Nothing in section (d) suggests that victim "convenience" equates with full and immediate remuneration, or that anything less is "unfair." What is fair is the judiciary's first-in-time policy.

(iv)

New Jersey Civil Rights Act
We also agree with the motion judge that the policy in question does not violate the Civil Rights Act (Act), but not for the reason he gave. The Act provides, in pertinent part:
Any person [1] who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or [2] whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may *1218 bring a civil action for damages and for injunctive or other appropriate relief.
. . . .
[N.J.S.A. 10:6-2(c) (emphasis added).]
The motion judge construed the Act to require, for a plaintiff to prevail, that the deprivation of a constitutional right be accompanied by "threats, intimidation or coercion." In other words, the judge agreed with defendant's interpretation that the phrase "by threats, intimidation, or coercion by a person acting under color of law" qualifies or modifies both phrases within section (c) such that for a defendant to be liable thereunder, threats, intimidation, or coercion accompanying the constitutional deprivation must be demonstrated. The judge reasoned:
I tend to agree with the defendant with regard to the reading of this particular part of the statute. The fact of the matter is the statute reads thatthat particular language reads by threats, intimidation, or coercion by a person acting under color of law follows the comma after interfered with in that second part of the section, so therefore the Court finds it really qualifies or modifies all the language contained within the statute, and there is a requirement that threats, intimidation, or coercion be necessary for an action under the Civil Rights Act.
We disagree. In our view, placement of a comma after "laws of this State" and before the word "or" divides the clause into two separate, independent phrases that do not act to modify nor qualify one another. Thus, properly read, the statute provides a person may bring a civil action under the Act in two circumstances: (1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion or force. Clearly, defendants' contrary interpretation renders the terms "deprive" and "interfere" indistinguishable, yet they are clearly different in meaning. Indeed, it makes sense to require, as the Legislature evidently did, that a plaintiff show "threats, intimidation or coercion" were employed if constitutional rights were merely interfered with or an attempt was made at interfering with them, and that no such showing is required where one has actually been deprived of the right. This view also comports with the broad remedial purpose of the Act. See, e.g., Owens v. Feigin, 194 N.J. 607, 613-14, 947 A.2d 653 (2008).
Actually, the motion judge acknowledged his interpretation may have been mistaken and ruled similarly on other grounds, namely Felicioni had made "no showing that there [was] any deprivation of substantive due process or equal protection rights or privileges," thereby making "no showing ... of a violation of the New Jersey Civil Rights Act."
The fact is[,] whether or not the Court is correct[in its assessment of the "threats" part of the Act,] plaintiffs have failed to show any deprivation of substantive due process or equal protection rights, privileges, or immunities in this particular case as stated. There's been no showing that there's been any deprivation of substantive due process or equal protection rights or privileges by the plaintiff here. And point of fact, there is a restitution order and the plaintiff will benefit from that restitution order and until and unless there has been no payment the Court is unable to find that he's been harmed.
[emphasis added.]
Here, we fully agree with the motion judge. As already noted, the judiciary's first-in-time policy offends neither equal protection nor due process protections, nor any other constitutional (VRA) *1219 or statutory provision upon which a claim for relief under the Civil Rights Act may be predicated.
Affirmed.
NOTES
[1] Victims of violent crimes may seek compensation from the Victims of Crime Compensation Board (VCCB), N.J.A.C. 13:75-1.1, which provides compensation to victims of violent crimes for some of the expenses that victims suffer as a result of the crime. Thus, a court's restitution award may be redirected to the VCCB rather than the victim to reimburse the VCCB for an award previously made to the victim.
[2] Felicioni was afforded the opportunity to weigh in on Cervini's eligibility or suitability for ISP. In response to the solicitation, Felicioni agreed that Cervini should be considered for ISP so he could "go to work and pay all the restitution involved including my own." Felicioni also attached documents establishing the value of his loss at $27,225.