NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2384-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JEFFREY WALKER,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

June 3, 2024

APPELLATE DIVISION

Submitted May 6, 2024 – Decided June 3, 2024

Before Judges Sabatino, Marczyk, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 11-02-0411.

Wolf Law PC, attorneys for appellant (Robert W. Ruggieri, of counsel; Randolph H. Wolf, on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica Lucinda do Outeiro, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

CHASE, J.S.C. (temporarily assigned)

The question before us on appeal is whether, in the context of a criminal case, a defendant has the right to direct the sequence in which victims receive

restitution payments and if restitution can be extinguished when a victim has not been located. Cancelling out restitution would run counter to the remunerative, rehabilitative, deterrence, and punitive goals of restitution, allow a defendant to keep the fruits of their offense, and deprive victims of compensation for the losses suffered. As such, we conclude a defendant cannot control in which order his victims get paid, and restitution should not be extinguished when a victim has not been located.

I.

In 2011, defendant Jeffery Walker was indicted for second-degree theft by illegal retention, N.J.S.A. 2C:20-9; second-degree misappropriation of entrusted property, N.J.S.A. 2C:21-15; third-degree theft by deception, N.J.S.A. 2C:20-4; and third-degree misappropriation of entrusted property, N.J.S.A. 2C:21-15. Defendant misappropriated health care insurance premiums from his company's employees instead of paying them to the insurance carrier. Pursuant to an agreement with the State, defendant pleaded guilty to an amended count of third-degree theft by illegal retention and third-degree misappropriation of entrusted property. In exchange, the State recommended a sentence of five years' probation conditioned on defendant's disqualification from holding future government employment, maintenance of full-time employment, and paying of over $72,000 in restitution to his victims.

In July 2012, defendant was sentenced to probation in accordance with the plea agreement. An amended judgment of conviction set the restitution amount at $72,471.35, payable to his 101 victims "over a period of five years . . . payable through probation in equal installments over the period of probation." Defendant's probation ended in 2017, and the then-outstanding balance of his restitution was transferred to collections. As of October 20, 2022, defendant had paid only $27,746 of the money he misappropriated, still owing $45,595.35.

Rather than paying the substantial arrears of the restitution amount he agreed to and was ordered to pay, defendant sought instead to reduce that amount by attempting to obtain information from the Monmouth County Probation Department to determine what amount was still owed to the individual victims and to pay off their claims. Defendant learned his restitution had been prorated among all of the victims. He also learned some of the victims had not been located and their prorated restitution escheated to the State in case they were later located.

In November 2022, defendant filed a PCR petition to return the escheated funds to the Monmouth County Probation Department, to pay those funds to victims who had been located, to reduce the amount of restitution to the amounts still owed after escheated funds had been distributed to the located

A-2384-22

victims, or alternatively, to fix the current balance of restitution only to those amounts still owed to located victims. Defendant then argued it would be in the interest of justice that his restitution obligation be deemed completed once the located victims were paid the amount of their loss and he be relieved from having to make any further payments for those victims who had not been located.

After hearing oral argument, Judge Chad N. Cagan authored a thorough nineteen-page written opinion denying defendant's PCR. Although the court held the motion was procedurally deficient because defendant offered no proof of service upon the probation department, a necessary party, the court addressed the procedural and substantive errors inherent in defendant's attempts to use PCR to obtain his desired relief.

The court held the PCR petition was untimely under Rule 3:22-12(a)(1)(A) and defendant's claim of "excusable neglect" was unsupported by the facts presented, but even if defendant's factual assertions were true, there was no reasonable probability enforcement of the time bar would result in a fundamental injustice. The court cited defendant's agreement to pay restitution, his clear awareness of his obligations, and his failure to entirely

pay them over the five years of probation as he had been ordered.[1] The court also found no fundamental injustice warranting waiver of the five-year statutory time limit to file a PCR because defendant had agreed to pay the entire amount as part of his plea, had not followed his agreement, and did not allege the outcome of the proceedings was unjust. Judge Cagan then noted defendant agreed at oral argument his sentence was not illegal, and so even if the application was not time-barred, it did not fit into any cognizable ground for relief under Rule 3:22-2. Defendant appeals from a March 7, 2023 order denying his petition.

On appeal, defendant argues:

POINT I.

THE COURT BELOW ERRED IN DENYING [DEFENDANT'S] MOTION OF NOVEMBER 1, 2022. THE COURT BELOW GAVE THREE REASONS FOR DENYING THE MOTION, BUT UPON CLOSE REVIEW NONE OF THESE HAVE MERIT. THUS, THE DECISION OF THE COURT BELOW MUST BE REVERSED. AT THE VERY LEAST, THE COURT BELOW SHOULD HAVE DIRECTED THE PROBATION DEPARTMENT TO ALLOCATE THE PAYMENTS ALREADY RECEIVED FROM [DEFENDANT] TO THE VICTIMS WHO HAVE BEEN LOCATED. BEYOND THAT, THE COURT BELOW SHOULD HAVE MODIFIED THE JUDGMENT OF

---

[1] Defendant's probation could have been extended for up to five additional years in order for him to complete his restitution. N.J.S.A. 2C:45-2(c)(2).

CONVICTION SO THAT ONCE THE VICTIMS ALREADY LOCATED HAD BEEN FULLY COMPENSATED, [DEFENDANT] WOULD HAVE NO FURTHER OBLIGATIONS TOWARDS RESTITUTION.

A. The [c]ourt [b]elow denied the Motion in part because defendant had not served the Motion papers on the Probation Department. There is absolutely no [Rule] that requires such service. Furthermore, if the [c]ourt below felt that under the circumstances such service was appropriate and/or necessary, it should have directed defendant's counsel to do so, and held consideration of the Motion until it was complete, and Probation had an opportunity to respond if it so chose. The holding of the [c]ourt [b]elow must be reversed.

B. The [c]ourt [b]elow denied the Motion in part because it determined it was untimely under R[ule] 3:22-12. In so ruling the [c]ourt [b]elow applied the wrong standard, holding that the excusable neglect standard applied rather than the discovery doctrine standard. Applying the proper standard the Motion was timely, because on the facts the time to file did not begin to run until Probation provided the report on the payments made by defendant. The holding of the [c]ourt [b]elow must be reversed.

C. The [c]ourt [b]elow denied the Motion in part because it held that the application failed to establish any

A-2384-22

grounds for granting relief under R[ule] 3:22-2. In so holding, the [c]ourt [b]elow relied on facts that were unsupported by the record, and legal principles that were wrong. Thus, the decision below must be reversed.

## II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard additionally applies to mixed questions of law and fact. Id. at 420. Finally, we use a de novo standard of review when a PCR court does not conduct an evidentiary hearing. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing Harris, 181 N.J. at 421).

Rule 3:22-12 states in pertinent part:

[N]o petition shall be filed pursuant to this rule more than [five] years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless:

(A) it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice[.]

[R. 3:22-12(a)(1)(A).]

A-2384-22

The five-year time bar may be relaxed only under the specified circumstances set forth in Rule 3:22-12(a)(1)(A).  In assessing whether excusable neglect justifies relaxation of the time bar for PCR petitions set forth in Rule 3:22-12, we "consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009) (quoting State v. Afanador, 151 N.J. 41, 52 (1997)).  More than "a plausible explanation for [the defendant's] failure to file a timely PCR petition" is required. Ibid.  Our Supreme Court has described the required showing as one of "compelling, extenuating circumstances," State v. Milne, 178 N.J. 486, 492 (2004) (quoting Afanador, 151 N.J. at 52), or alternatively, "exceptional circumstances . . . ." State v. Murray, 162 N.J. 240, 246 (2000) (citing State v. Mitchell, 126 N.J. 565, 580 (1992)).

We reject defendant's claims and affirm substantially for the reasons expressed in the thorough and cogent opinion of Judge Cagan.  We add the following.

Defendant's amended judgment of conviction was filed on July 13, 2012.  Therefore, his petition should have been filed by July 13, 2017.  Instead, it was filed over five years later, in November 2022.  Our review of the record shows defendant did not demonstrate excusable neglect, nor did he allege facts

constituting "compelling, extenuating circumstances" or "exceptional circumstances" justifying relaxation of the time bar under Rule 3:22-12(a)(1)(A).

Moreover, defendant's claim his petition was filed within one year of "the date on which the factual predicate for the relief sought was discovered, [and] that factual predicate could not have been discovered earlier through the exercise of reasonable diligence" fails on its face. Defendant did not even engage an attorney to find out what had happened to the restitution until more than seven years after his conviction. His lack of concern for his victims until seven years later was not "reasonable diligence" on his part, especially since his stated goal is to avoid disgorging himself of thousands of dollars in ill-gotten gains.

Despite the petition's procedural defects, out of an abundance of caution, the judge addressed defendant's petition on its merits, holding the petition did not assert a "cognizable ground for PCR" as it did not fit into the enumerated causes under Rule 3:22-2(a)-(e). Defendant concedes the original sentencing judge did not err but posits "subsequent developments have rendered the original judgment unfair, creating a miscarriage of justice." Nothing can be further from the truth.

Defendant cites no authority to support his request to reduce the amount of restitution he agreed to pay because some of the scores of victims he defrauded have yet to be located. We do not give our imprimatur to defendant's proposal to reach out directly to victims to essentially renegotiate individual restitution settlements with them.[2] Criminal courts should not facilitate, much less authorize, contact between convicted offenders and their victims except through the probation department or the prosecutor's office victim advocate. Importantly, moreover, we deem a private settlement agreement to extinguish or reduce a restitution award to be contrary to public

---

[2] The Code of Criminal Justice recognizes that the civil law provides another avenue through which a crime victim may seek recompense from the defendant. N.J.S.A. 2C:44-2(f) provides:

> The ordering of restitution pursuant to this section shall not operate as a bar to the seeking of civil recovery by the victim based on the incident underlying the criminal conviction. Restitution ordered under this section is to be in addition to any civil remedy which a victim may possess, but any amount due the victim under any civil remedy shall be reduced by the amount ordered under this section to the extent necessary to avoid double compensation for the same loss, and the initial restitution judgment shall remain in full force and effect.

This section presupposes a civil action initiated by a victim. Nothing in this section authorizes a defendant to reach out to a victim to seek to reduce the restitution amount ordered by a sentencing court.

policy. See State v. DeAngelis, 329 N.J. Super. 178, 180-81 (App. Div. 2000). We reiterate and emphasize the restitution amount and framework was part of the plea agreement negotiated with the State and approved by the trial court.

"[T]he legislative purpose of restitution is not merely remunerative but encompasses rehabilitative, deterrence[,] and punitive goals as well." Felicioni v. Admin. Off. of the Cts., 404 N.J. Super. 382, 394 (App. Div. 2008) (citing State v. Pulasty, 259 N.J. Super. 274, 283 (App. Div. 1994)); see also State v. Newman, 132 N.J. 159, 173 (1992) (noting the statutory preconditions for restitution are plainly satisfied where a defendant derived a pecuniary gain from the offense). To extinguish defendant's obligation to pay the full restitution would unjustly reward defendant for his failure to timely pay the full restitution amount within his negotiated five years. Having failed to comply with the agreed-upon payment scheduled negotiated with the prosecutor, defendant is hard pressed to seek to renegotiate his restitution exposure with individual victims. Moreover, his proposal would allow him to keep the fruits of his offense and deprive his victims of compensation for the losses suffered because of his crime. Such an outcome would run counter to the remunerative, rehabilitative, deterrence, and punitive goals of restitution. Felicioni, 404 N.J. Super. at 394.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-2384-22