67 A.3d 660

DANIEL TUMPSON, RUSSELL HOOVER, ERIC VOLPE, CHERYL FALLICK AND JOEL HORWITZ, PLAINTIFFS-RESPONDENTS/CROSS-APPELLANTS, v. JAMES FARINA, IN HIS CAPACITY AS HOBOKEN CITY CLERK, AND THE CITY OF HOBOKEN, DEFENDANTS-APPELLANTS/CROSS-RESPONDENTS, AND MILE SQUARE TAXPAYER ASSOCIATION 2009, INC., GINA DENARDO, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED AND 611–613, LLC, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED, INTERVENORS-APPELLANTS/CROSS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 27, 2012—Decided May 29, 2013.

Before Judges FISHER, ALVAREZ and ST. JOHN.

*Victor A. Afanador* argued the cause for appellants/cross-respondents James Farina and City of Hoboken (*Lite DePalma Greenberg, LLC,* attorneys; *Mr. Afanador,* of counsel and on the briefs; *Marissa L. Quigley,* on the briefs).

*Charles X. Gormally* argued the cause for appellants/cross-respondents Mile Square Taxpayer Association 2009, Inc. and Gina DeNardo (*Brach Eichler, L.L.C.,* attorneys; *Mr. Gormally,* of counsel and on the briefs; *Sean A. Smith,* on the briefs).

*Renee Steinhagen* and *Flavio L. Komuves* argued the cause for respondents/cross-appellants Daniel Tumpson, Russell Hoover, Eric Volpe, Cheryl Fallick and Joel Horwitz (*New Jersey Appleseed Public Interest Law Center, Inc.,* and *Zazzali, Fagella, Nowak, Kleinbaum & Friedman,* attorneys; *Ms. Steinhagen* and *Mr. Komuves,* on the briefs).

The opinion of the court was delivered by

ST. JOHN, J.A.D.

We are presented with two issues in this appeal: whether James Farina, the Clerk of the City of Hoboken, complied with the requirements of the Optional Municipal Charter Law, commonly known as the Faulkner Act (Faulkner Act), *N.J.S.A.* 40:69A–1 to –210, with regard to a referendum petition submitted by plaintiffs as a Committee of Petitioners (Committee); and, if he did not, whether his conduct constituted a violation of the New Jersey Civil Rights Act (NJCRA), *N.J.S.A.* 10:6–1 to –2, which would allow an award of attorneys' fees to the prevailing party.

## I.

We briefly summarize the relevant procedural history and the facts based on the record before us.

Plaintiffs are residents of the City of Hoboken, which is organized under the Faulkner Act. By enacting *N.J.S.A.* 40:69A–185, the Legislature provided voters in Faulkner Act municipalities the right to subject an ordinance passed by their municipal council to a popular plebiscite.[1] The Supreme Court has suggested "that the referendum statute in the Faulkner Act should be liberally construed ... to promote the 'beneficial effects' of voter participation." *In re Ordinance 04–75, supra,* 192 *N.J.* at 459, 931 *A.*2d 595 (quoting *Retz v. Mayor & Council of Saddle Brook,* 69 *N.J.* 563, 571, 355 *A.*2d 189 (1976)).

The referendum process is designed to serve as "a check on the exercise of local legislative power, fostering citizen involvement in the political affairs of the community." *Ibid.* Subject to certain exceptions not applicable here, the referendum process confers upon the voters of a municipality the authority "to approve or reject at the polls ... any ordinance passed by the council, against which a referendum petition has been filed as herein provided." *N.J.S.A.* 40:69A–185.

On February 16, 2011, the Hoboken City Council (Council) introduced Ordinance Z–88 (Ordinance),[2] which sought to amend a portion of the city rent control code. The amendments to the code included a disclosure statement provision, as well as a two-year limitation on requesting a legal rent calculation and on collecting rent overcharges. On March 2, 2011, the Council unanimously approved the Ordinance. On March 11, 2011, Mayor Dawn Zim-

---

[1] The New Jersey Constitution does not contain a referendum clause permitting voters to directly challenge state or municipal legislative enactments. *In re Ordinance 04–75,* 192 *N.J.* 446, 459 n. 7, 931 *A.*2d 595 (2007).

[2] The Ordinance was titled "An Ordinance Amending Certain Provisions of Chapter 155 of the City Code, Entitled 'Rent Control.' "

mer approved the Ordinance, thereby making it effective March 31, 2011.

On March 30, 2011, seeking the repeal of the Ordinance by referendum, the Committee presented a petition containing 1442 signatures to Farina. Farina stamped the petition as "received for review but not filed." On April 1, 2011, Farina notified the Committee in writing:

> On March 30, 2011, my office received documents purporting to be a petition for referendum seeking to repeal Ordinance (Z–88): AN ORDINANCE AMENDING CERTAIN PROVISIONS CHAPTER 155 OF THE CITY CODE ENTITLED "RENT CONTROL." The documents served upon this office only reflected 1,442 signatures on the face of the "petition." Please be advised that the last election where members of the General Assembly were elected was November 3, 2009. At the November 3, 2009 election, there were 13,112 total votes cast in the City of Hoboken.
>
> The documents submitted upon this office only include 1,442 signatures, which does not meet the 15% threshold required for a properly filed petition for referendum pursuant to *N.J.S.A.* 40:69A–185. Due to the fact that your original documents as originally presented to this office did not contain a sufficient number of signatures to constitute a properly filed petition for referendum, I refuse to accept your documents as a properly filed petition for referendum. I hereby return your originally submitted documents as unfiled, and will not keep a copy of same.[3]

By letter dated April 6, 2011, the Committee protested Farina's action, arguing he had no authority to refuse to file the petition. Further, the Committee contended that the Faulkner Act obligated Farina to undertake certain actions, including specifying how many of the 1442 signatures submitted were valid, and providing the Committee with the exact number of valid signatures needed to make the petition sufficient.

On April 11, 2011, Farina responded that the petition was not accepted because it was "facially defective." That same day, the Committee submitted a supplementary petition which included 872 additional signatures which, if accepted with the original filing, would bring the total number of signatures submitted to 2314.

---

[3] The parties do not contest that the fifteen percent qualified voter requirement equals 2189 signatures.

Farina noted on the supplemental petition "received for review but not filed." Farina informed the Committee:

This is to certify that on April 11, 2011 the Committee of the Petitioners attempted to file a supplementary petition containing 40 petition pages with 40 attached Affidavits of Circulator and 872 signatures as an amendment to the referendum petition filed by the Committee of the Petitioners with the City Clerk on March 30, 2011 which protested against the passage by the City Council and approval by the Mayor of Ordinance Z–88 and that the supplementary petition was not accepted by the Hoboken City Clerk as a filed amendment to the March 30, 2011 referendum petition as required by *N.J.S.A.* 40:69A–185 et seq., in particular as required by *N.J.S.A.* 40:69A–188. Amendment of Initiative or Referendum Petition.

In a subsequent letter, dated April 14, 2011, Farina stated that the petition "was presented upon this office with no cover letter or indication of what it purported to be other than a petition for referendum that reflected 872 signatures." He further stated:

Pursuant to *N.J.S.A.* 40:69A–185, the time for filing a petition for the power of a referendum for an ordinance must be filed "twenty days after such final passage and approval of such ordinance...." The (20) twenty day time period for the aforementioned ordinance expired on March 31, 2011. Therefore, this documentation is hereby returned to you as an unfiled and untimely petition for referendum.

As a result of Farina's actions, plaintiffs filed a verified complaint and order to show cause on May 4, 2011. The complaint consisted of five counts. Count one requested the court find Farina violated the Faulkner Act by failing to process their petition, attempting to "unfile" the petition, and by refusing to accept their supplementary petition. Count two sought an injunction prohibiting Hoboken from enforcing the Ordinance until the petition was withdrawn or until the Ordinance was repealed by voters. Count three sought to estop Farina from examining whether the 1442 signatures on the original petition were those of qualified voters and from determining whether the petition had "some other defect." Count four requested the court find that Farina had waived his right to examine the sufficiency of the supplementary petition. Count five alleged violations of the NJCRA and specifically requested attorneys' fees pursuant to *N.J.S.A.* 10:6–2(f).

On June 14, 2011, the trial judge partially granted plaintiffs' order to show cause and denied defendants' cross-motion to dis-

miss.  The judge determined that Farina's failure to process and attempt to "unfile" and return plaintiffs' original petition violated *N.J.S.A.* 40:69A–187, and that Farina's failure to process plaintiffs' supplementary petition violated *N.J.S.A.* 40:69A–188.  In a comprehensive and cogent written opinion, she reasoned that when the petition was delivered and accepted, Farina had a duty to file the petition and proceed with an examination of its sufficiency. If after examining the petition Farina had found a deficiency, he was obligated to notify two members of the Committee of his findings. The trial judge found that Farina's actions were arbitrary and capricious.   She then dismissed the complaint after ordering Farina to process and review the original petition and supplementary petition.

On June 24, 2011, the intervenors moved for a stay of the June 14 order.   In denying the stay, the trial judge clarified her June 14 order, stating "at the conclusion of the 20 days, if the City determines the filings are insufficient, the plaintiff may amend pursuant to the law. *N.J.S.A.* 40:69A–188."

By letter to the Committee dated July 7, 2011, Farina found that of the 1442 signatures in the original petition, 456 were not registered voters or not found, leaving only 986 valid signatures. The amended petition was also reviewed and of the 872 signatures submitted, 293 signatures were not registered voters or not found, leaving 579 valid signatures.   The 986 valid signatures from the original petition and the 579 valid signatures from the amended petition resulted in a total of 1573 valid signatures, a number below the Faulkner Act's fifteen percent threshold.

On July 14, 2011, defendants and intervenors filed a notice of appeal.   On July 18, 2011, the Committee submitted an additional 844 signatures pursuant to the clarification provided in the June 24 order, which yielded 651 valid signatures.   On July 25, 2011, Farina responded that while an aggregation of the valid signatures from all three petitions, 2224, would meet the fifteen percent threshold, because the submissions were not timely, he could not "certify these submissions as a valid petition for referendum,

Ordinance Z–88 is not suspended by the petition submitted, and there is no requirement for Ordinance Z–88 to go to referendum."

Plaintiffs filed a notice of cross-appeal on July 29, 2011. In response to Farina's denial of their petitions, plaintiffs filed a motion to enforce litigants rights. The trial judge determined she lacked jurisdiction to rule on the motion because of the pendency of the appeal. Plaintiffs then filed an emergent application with the Appellate Division seeking review of the trial court's order. On August 12, 2011, we found that plaintiffs merely sought to enforce a judgment and therefore the trial judge was permitted to hear the motion. We also determined that the record was insufficient and instructed the trial judge to decide whether the July 18, 2011 supplementary petition was timely and, if so, to decide the application. We advised the trial judge to use her discretion in ruling on the matter before the general election.

The trial judge granted plaintiffs' motion to enforce litigants rights, required Farina to certify the petition as valid, and prohibited the city from enforcing the Ordinance pending the outcome of the referendum in the general election. The intervenors amended their notice of appeal, moving for an acceleration of this appeal and a stay of the trial court's order. On September 26, 2011, we granted intervenors' motion for a stay and acceleration of appeal. Plaintiffs appealed our grant of the stay, which the Supreme Court vacated in an October 5, 2011 order.

Following our grant of plaintiffs' motion for limited remand, a second trial judge considered their motion for summary judgment on count five of the complaint, seeking counsel fees. On October 24, 2011, the second trial judge entered an order granting plaintiffs' motion. Thereafter, on November 4, 2011, an order was entered awarding fees to plaintiffs. On December 6, 2011, the second trial judge denied Hoboken's motions for reconsideration and to vacate. This appeal ensued.

On November 8, 2011, the Committee's question was submitted to the voters of Hoboken, who rejected it. The Ordinance was thus sustained and remains effective. As a result, the issue in

controversy concerning the right of the Committee to have its petition submitted to voters, which was contested by defendants and intervenors, has been resolved by its rejection by voters, technically rendering the issue moot.

## II.

Even when issues presented are technically moot, we may nonetheless address them on their merits when they involve matters of particular public interest. *See In re Application of Boardwalk Regency Corp. for Casino License,* 90 *N.J.* 361, 368, 447 *A.*2d 1335, *appeal dismissed sub nom., Perlman v. Att'y Gen.,* 459 *U.S.* 1081, 103 *S.Ct.* 562, 74 *L.Ed.*2d 927 (1982); *In re Geraghty,* 68 *N.J.* 209, 212–213, 343 *A.*2d 737 (1975). This is particularly true when the issue is one likely to recur, yet likely to evade judicial review. *N.J. Div. of Youth and Family Servs. v. J.B.,* 120 *N.J.* 112, 118–119, 576 *A.*2d 261 (1990); *In re Farrell,* 108 *N.J.* 335, 347, 529 *A.*2d 404 (1987).

While the Supreme Court is "limited by the case-or-controversy requirement of Art. III to adjudication of actual disputes between adverse parties," *Richardson v. Ramirez,* 418 *U.S.* 24, 36, 94 *S.Ct.* 2655, 2662, 41 *L.Ed.*2d 551, 560 (1974), as was the case in *Board of School Commissioners of the City of Indianapolis v. Jacobs,* 420 *U.S.* 128, 129, 95 *S.Ct.* 848, 850, 43 *L.Ed.*2d 74, 78 (1975) ("a case or controversy no longer exists"), our State Constitution does not impose a similar restraint on the exercise of our judicial power. *Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y.,* 58 *N.J.* 98, 107, 275 *A.*2d 433 (1971). Rather, we look to "a sufficient stake and real adverseness" in the litigants, *ibid.,* or to "issues of great public importance." *In re Geraghty, supra,* 68 *N.J.* at 212, 343 *A.*2d 737; *see also John F. Kennedy Mem'l Hosp. v. Heston,* 58 *N.J.* 576, 579, 279 *A.*2d 670 (1971); *State v. Perricone,* 37 *N.J.* 463, 469, 181 *A.*2d 751, *cert. denied,* 371 *U.S.* 890, 83 *S.Ct.* 189, 9 *L.Ed.*2d 124 (1962).

■ Inasmuch as all the parties refrained from raising the mootness issue to this court despite the submission of the Ordinance to the voters and the rejection of the Committee's question, we assume that "all are desirous of having some judicial expression ... for future guidance." *Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n,* 64 *N.J.* 17, 22, 311 *A.*2d 737 (1973). Even though the parties' failure to assert mootness does not alone require that we rule on the merits, under the circumstances we conclude that there still exists an adversary proceeding, that a broad public interest concerning referenda is involved, and that the circumstances which gave rise to this litigation are likely to recur.

### III.

This matter concerns the interpretation by a municipal clerk of his duties under the Faulkner Act and therefore constitutes a question of statutory interpretation, which is a purely legal issue. Thus, we owe no deference to the trial court's legal conclusions. *See Manalapan Realty v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

"Our task in statutory interpretation is to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge Inc.,* 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009); *see also N.J.S.A.* 1:1–1 ("In the construction of the laws and statutes of this state, ... words and phrases shall ..., unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning[.]"). Therefore, we will " 'look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen.' " *Bosland, supra,* 197 *N.J.* at 553, 964 *A.*2d 741 (quoting *Pizzullo v. N.J. Mfrs. Ins. Co.,* 196 *N.J.* 251, 264, 952 *A.*2d 1077 (2008)). "A court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation." *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005) (internal quotation marks and citation omit-

ted); *see also Burnett v. Cnty. of Bergen,* 198 *N.J.* 408, 421, 968 *A.*2d 1151 (2009). "The Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose." *State v. Federanko,* 26 *N.J.* 119, 129, 139 *A.*2d 30 (1958). "[S]tatutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole." *Burnett, supra,* 198 *N.J.* at 421, 968 *A.*2d 1151 (quoting *Bedford v. Riello,* 195 *N.J.* 210, 224, 948 *A.*2d 1272 (2008) (citation omitted)).

Our function is not to "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002). We "cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment.'" *DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039 (quoting *Craster v. Bd. of Comm'rs,* 9 *N.J.* 225, 230, 87 *A.*2d 721 (1952)). Nor may we "'engage in conjecture or surmise which will circumvent the plain meaning of the act.'" *Ibid.* (quoting *In re Closing of Jamesburg High Sch.,* 83 *N.J.* 540, 548, 416 *A.*2d 896 (1980)). Therefore, if the meaning of those words is clear, the analysis is complete, and we need look no further. *Mason v. City of Hoboken,* 196 *N.J.* 51, 68, 951 *A.*2d 1017 (2008).

As plaintiffs acknowledge, the applicable standard of review is whether Farina's rejection of the petition and the corrective affidavits was arbitrary, capricious, or clearly erroneous under the law. "The judicial role is . . . limited to a review of the clerk's actions and to intervene only when those actions appear to be arbitrary and unreasonable, as demonstrated by the evidence and applicable law." *D'Ascensio v. Benjamin,* 142 *N.J.Super.* 52, 55, 359 *A.*2d 885 (App.Div.) (applying that review standard in a public referendum context), *certif. denied,* 71 *N.J.* 526, 366 *A.*2d 681 (1976). "Unless arbitrary abuse of power is evident, the discretion

of the clerk controls, regardless of the methods or techniques utilized by him [or her] in achieving the result." *Ibid.*

In undertaking our analysis, we sequentially review the application of the plain meaning of the Faulkner Act sections in dispute.

The parties do not contest that voters have the right to approve or reject an ordinance, if the provisions of the Faulkner Act are complied with. *N.J.S.A.* 40:69A–185 provides in pertinent part:

No ordinance passed by the municipal council ... shall take effect before twenty days from the time of its final passage and its approval by the mayor where such approval is required. If within twenty days after such final passage and approval of such ordinance a petition protesting against the passage of such ordinance shall be filed with the municipal clerk and if the petition shall be signed by a number of the legal voters of the municipality equal in number to at least 15% of the total votes cast in the municipality at the last election at which members of the General Assembly were elected, the ordinance shall be suspended from taking effect until proceedings are had as herein provided.

In this case, the Committee attempted to file a petition with Farina within the twenty-day period. Farina did not accept the petition on the grounds that it "did not contain a sufficient number of signatures to constitute a properly filed petition for referendum[.]" [4]

However, nothing in the statute authorizes a municipal clerk to not file a petition, particularly since the statute states the petition "shall be filed[,]" thereby imposing an unequivocal filing obligation on the municipal clerk. Once filed, the municipal clerk is obligated to determine if the petition is signed by the requisite fifteen percent of qualified voters.[5] *N.J.S.A.* 40:69A–189 instructs the suspension of the ordinance and period of suspension:

Upon the filing of a referendum petition with the municipal clerk, the ordinance shall be suspended until ten days following a finding by the municipal clerk that the petition is insufficient or, if an amended petition be filed, until five days thereafter; or, if the petition or amended petition be found to be sufficient, until it be

---

[4] An identical issue was presented to us in *Lawrence v. Schrof,* 174 *N.J.Super.* 624, 417 A.2d 114 (App.Div.), *certif. denied,* 85 *N.J.* 149, 425 A.2d 299 (1980). Based on the facts in that case, we did not decide the issue.

[5] *N.J.S.A.* 40:69A–186 sets forth certain requirements for petition papers.

withdrawn by the Committee of the Petitioners or until repeal of the ordinance by vote of the council or approval or disapproval of the ordinance by the voters.

This provision is consistent with the suspension provisions of Section 185 of the Faulkner Act which provides: "the ordinance shall be suspended from taking effect until proceedings are had as herein provided."

The examination of the petition papers shall be undertaken as follows:

All petition papers comprising an initiative or referendum petition shall be assembled and filed with the municipal clerk as one instrument. Within twenty days after a petition is filed, the municipal clerk shall determine whether each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified voters. After completing his examination of the petition, the municipal clerk shall certify the result thereof to the council at its next regular meeting. If he shall certify that the petition is insufficient he shall set forth in his certificate the *particulars* in which it is defective and shall at once notify at least two members of the Committee of the Petitioners of his findings.

[*N.J.S.A.* 40:69A–187 (emphasis added).]

The language is clear and unambiguous, the municipal clerk must set forth the "particulars in which [the petition] is defective[,]" not, as interpreted by Farina, only one defective particular of his choosing. Here, Farina, in effect, identified only one defective particular, that the petition did not have signatures from the requisite fifteen percent of qualified voters, even assuming all signatures were valid. As subsequent proceedings disclosed, there were other defective particulars, namely the validity of many of the signatures.

The determination by a municipal clerk that a petition is insufficient does not end his or her duties, nor does it terminate the referendum right of the Committee. *N.J.S.A.* 40:69A–188 sets forth the next steps to be taken:

An initiative or referendum petition may be amended at any time within ten days after the notification of insufficiency has been served by the municipal clerk, by filing a supplementary petition upon additional papers signed and filed as provided in case of an original petition. The municipal clerk shall, within five days after such an amendment is filed, examine the amended petition and, if the petition be still insufficient, he shall file his certificate to that effect in his office and notify the Committee of the Petitioners of his findings and no further action shall be had on

such insufficient petition. The finding of the insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose.

*N.J.S.A.* 40:69A–187 and –188 clearly mandate a two-step process for the exercise of the right of referendum.

First, within twenty days from the time of an ordinance's final passage and approval by the mayor, the petition must be submitted to and filed by the municipal clerk. *N.J.S.A.* 40:69A–185. The parties do not dispute that the original petition met this twenty-day requirement. Then, within twenty days after a petition is filed, the municipal clerk shall determine whether each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified voters. *N.J.S.A.* 40:69A–187.

If the petition is insufficient, all the defective particulars must be reported to the council and two members of the committee. *Ibid.* The committee, at any time within ten days after the notification of insufficiency has been served by the municipal clerk, has one opportunity to amend the referendum petition by filing a supplementary petition upon additional papers signed and filed as provided in the case of an original petition. *N.J.S.A.* 40:69A–188. If the petition is still defective, no further action shall be had on such insufficient petition. *Ibid.*

The statutory framework is clear: a committee of petitioners has one opportunity for an original petition and only one opportunity for an amended petition. *See ibid.* To the extent that a committee chooses to submit an original petition with only a small percentage of the necessary fifteen percent of qualified voters, they do so at their peril since they will have only one opportunity to file an amended petition with the requisite number of signatures.

A municipal clerk lacks the discretion to refuse to file a petition, even if the signatures thereon are less than the mandated fifteen percent of qualified voters. By not filing a petition which is submitted on the last day for filing, a municipal clerk could effectively bar a committee from exercising its right of referen-

dum by asserting that a subsequently complying petition is untimely. This would have the effect of denying the committee its right to file an amended petition as permitted by *N.J.S.A.* 40:69A–188.

We concur with the trial judge that Farina's refusal to file the original petition was plainly contrary to the statute and therefore arbitrary and capricious. While the orders that resulted from Farina's arbitrary rejection of the original petition afforded the Committee three submissions, we see no reason to set aside the trial judge's orders under the circumstances of this case. The requirements of Section 187 must be scrupulously observed. Those requirements are not onerous, and it was not unreasonable to insist that Farina adhere to them. We are satisfied that the Legislature intended that petitioners, as here, should enjoy the right to amend an insufficient petition for referendum, even if the original petition did not contain signatures from fifteen percent of qualified voters.

## IV.

We now turn to defendants' contention that plaintiffs were not entitled to relief under the NJCRA, *N.J.S.A.* 10:6–1 to –2, because, under the circumstances, a violation of the Faulkner Act does not qualify as a violation of NJCRA. We agree.

In reviewing a grant of summary judgment, we apply the same standard as the motion judge. *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.,* 189 *N.J.* 436, 445–46, 916 *A.*2d 440 (2007). We first determine whether the moving party has demonstrated there were no genuine disputes as to material facts. *Alt. Mut. Ins. Co. v. Hillside Bottling Co., Inc.,* 387 *N.J.Super.* 224, 230, 903 *A.*2d 513 (App.Div.), *certif. denied,* 189 *N.J.* 104, 912 *A.*2d 1264 (2006).

[A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

[*Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A*.2d 146 (1995).]

We then decide "whether the motion judge's application of the law was correct." *Atl. Mut. Ins. Co., supra,* 387 *N.J.Super.* at 231, 903 *A*.2d 513. In doing so, we owe no deference to the motion judge's conclusions on the issues of law, and review those de novo. *Ibid.* (citing *Manalapan, supra,* 140 *N.J.* at 378, 658 *A*.2d 1230).

In determining whether the grant of summary judgment to plaintiffs was appropriate, we are guided by the plain meaning of the NJCRA, which provides in pertinent part:

Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[*N.J.S.A.* 10:6–2(c).]

In granting summary judgment to plaintiffs, the second trial judge concluded that:

[w]hile careful consideration was given by this court as to whether the actions taken by the defendant were merely a delay and not a deprivation of plaintiff's right of referendum, I find that the actions of the city clerk did, in fact, deprive ... the plaintiffs of their right of referendum on the ordinance.

We disagree. To deprive means "to take something away from" or "to keep from having and enjoying." *Webster's New College Dictionary* 310 (3d ed. 2008). Here, the Committee was not deprived of its right to referendum because the Ordinance was submitted to the voters of Hoboken in November 2009.

Nonetheless, we further examine the NJCRA to see if it supports plaintiffs' contentions. The NJCRA was adopted in 2004 "for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection." *Owens v. Feigin,* 194 *N.J.* 607, 611, 947 *A*.2d 653 (2008).

We have recognized two types of claims under the Act: first, a claim where one is "deprived of a right[;]" and second, a

claim where one's "rights are interfered with by threats, intimidation, coercion or force." *Felicioni v. Admin. Office of Courts*, 404 *N.J.Super.* 382, 400, 961 *A.*2d 1207 (App.Div.2008), *certif. denied*, 203 *N.J.* 440, 3 *A.*3d 1228 (2010). Interference with a right need not actually result in actual deprivation of the right. *Ibid.*

Plaintiffs' position renders the terms "deprive" and "interfere" indistinguishable, yet they are clearly different in meaning. The Legislature requires that a plaintiff show "threats, intimidation or coercion" were employed if a right was merely interfered with or an attempt was made at interfering with it. No such showing is required where one has actually been deprived of a right. This view also comports with the broad remedial purpose of the Act. *See, e.g., Owens, supra,* 194 *N.J.* at 613–14, 947 *A.*2d 653. Here, the record does not support a finding of "threats, intimidation or coercion" by defendants. *See N.J.S.A.* 10:6–2(c).

We also do not discern any deprivation of plaintiffs' substantive due process rights. As we have noted, "substantive due process is reserved for the most egregious governmental abuses against liberty or property rights, abuses that shock the conscience or otherwise offend judicial notions of fairness and that are offensive to human dignity." *Felicioni, supra,* 404 *N.J.Super.* at 392, 961 *A.*2d 1207 (internal quotations and citations omitted). That is not the case before us. Further, any procedural due process claim is moot, since the referendum was presented to the voters of Hoboken.

In summary, we hold that (1) defendants misapplied the provisions of the Faulkner Act, and (2) under the facts presented in the record, there is no basis under the NJCRA to award relief to plaintiffs.[6]

Affirmed in part and reversed in part.

---

[6] Defendants raised the issue of qualified immunity. Given our decision we need not reach that issue. We do note, however, that qualified immunity is an

affirmative defense under the NJCRA, and the defense of qualified immunity applies only to claims for money damages and not to claims for injunctive relief. *Ramos v. Flowers,* 429 *N.J.Super.* 13, 32, 56 *A.3d* 869 (App.Div.2012). We also do not address whether Farina falls within the meaning of "persons" under the NJCRA.