**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2106-18T3
     A-2981-18T3
     A-3513-18T3

M.M.B.,

  Plaintiff-Respondent,

v.

C.J.B.,

  Defendant-Appellant.[1]

_____

    Argued telephonically June 30, 2020 –
    Decided July 30, 2020

    Before Judges Messano and Vernoia.

    On appeal from the Superior Court of New Jersey,
    Chancery Division, Family Part, Somerset County,
    Docket No. FM-18-0528-11.

    Charles C. Rifici argued the cause for appellant (Rotolo
    Karch Law, attorneys; Charles C. Rifici, on the briefs).

---

[1] We have used initials and fictionalized the first names of the children. R. 1:38-3(d).

Jamie K. Von Ellen argued the cause for respondent (Gomperts Penza McDermott & Von Ellen, LLC, attorneys; Jamie K. Von Ellen and Marisa Lepore Hovanec, of counsel; Marisa Lepore Hovanec, on the brief).

PER CURIAM

We consolidated three appeals brought by defendant, C.J.B., that challenge six orders entered in the Family Part. Defendant contends, in part, these orders erroneously and unfairly modified the divorce settlement agreement (DSA) he entered into with his ex-wife, plaintiff M.M.B., now known as M.M. When the parties divorced in 2012, after nearly eleven years of marriage and the birth of two children — a son, Paul, born in December 2002, and a daughter, Alice, born in 2004 — the DSA provided for joint legal custody with plaintiff as the parent of primary residence.

Critical to these appeals, the DSA also required both parties to "confer with each other" on matters affecting the children's health, welfare, and education "with a view to adopt and follow those policies which are in the best interests of the children[,]" and to have "full and free direct access to the children's doctors . . . and other professionals[.]" The DSA further stated that defendant "shall have the option to determine the reasonableness and necessity of any treatment and will not unreasonably withhold his consent to such

treatment." In 2014, the parties executed an addendum to the DSA, whereby plaintiff was given sole decision-making authority regarding the education of Alice, in recognition of her "special needs" and in exchange for waiving any financial contribution from defendant.

## I.

## A.

The nature and degree of each parent's involvement in decisions regarding the medical care of the children prior to 2017 is disputed. However, between January 2017 and September 2018, plaintiff filed several motions seeking relief from what she generally characterized as defendant's unreasonable opposition to necessary medical or psychiatric treatment for the children. We provide some detail surrounding these motions because, although the orders that resulted are not the subjects of this appeal, they provide necessary context.

In March 2017, the judge issued a preliminary decision on the first of these motions, in which plaintiff sought "sole-decision making authority as it relate[d] to medical and psychological treatment" of Alice. The judge denied that request, however, he appointed Dr. Suneeta Sayyaparaju, a psychiatrist recommended by Alice's school, to perform an independent evaluation, and he ordered both parties to cooperate to the extent required by the doctor. The judge also ordered

plaintiff to furnish defendant with the names of all "doctors and professionals" who had treated both children since the final divorce.[2] Dr. Sayyaparaju's report found Alice's

> symptoms are consistent with an unspecified anxiety disorder. Given her poor eating and bowel related patterns, a Binge Eating Disorder and Encopresis need to be considered strongly.
>
> [Alice] struggles to engage effectively in traditional individual psychotherapy. She has great difficulty sharing her internal thoughts and emotions, often shutting down and refusing to speak, despite several trials of therapy with different providers.
>
> Given [Alice] has attempted trials of traditional psychotherapy and has made little to no progress, it would be in her best interest to consider psychiatric medication management to address underlying symptoms of anxiety. With medication, [she] will likely achieve anxiety relief allowing for better engagement and progress with psychotherapy.

In April 2017, plaintiff filed a second motion to grant her sole medical and psychological decision making for Alice or, alternatively, conduct a plenary hearing on the issue. Defendant again opposed the request. A different judge heard oral argument, and, in a thorough written decision that detailed each

---

[2] The judge's initial decision was not formalized in an order; however, the parties accepted its terms, which were formally incorporated by reference into an order entered by the second judge in response to a subsequent motion brought by plaintiff.

A-2106-18T3

party's assertions and arguments, the judge concluded that based on Dr. Sayyaparaju's evaluation, there was no "reason to further delay [Alice's] psychiatric treatment. While . . . mindful of [d]efendant's concerns," the judge noted that defendant was "not a doctor qualified to treat [Alice] and [defendant] agreed to the terms included in [the first judge's] decision that gave Dr. Sayyaparaju significant discretion."

However, the judge was reluctant to give plaintiff sole decision-making authority, and, so, he ordered that plaintiff provide defendant with seventy-two hours advance notice of any proposed medical treatment, and defendant was to timely respond with any objections. If the parties continued to disagree, the judge ordered them to schedule a conference with the "relevant doctor to discuss the appropriate course of conduct." With the consent of both parties, the judge's amended June 21, 2017 order required them "to participate in psycho-education with Dr. Sayyaparaju and to perform any and all tasks recommended by the doctor," and to sign authorizations with Dr. Sayyaparaju, as well as a licensed clinical social worker, Laura Roth, "to enable the treatment provider to discuss communications with each parent with the other[.]"

Less than one month later, plaintiff filed a third motion, again asserting defendant was obstructing necessary medical and psychiatric treatment for both

5

children. She sought sole decision-making authority, appointment of a guardian ad litem (GAL), and a plenary hearing on the issue. Defendant again opposed the application.

In his written statement of reasons supporting his September 29, 2017 order, the judge again denied plaintiff's requested relief. He summarized the parties' conflicting assertions but determined that, unlike the factual circumstances that existed in Nufrio v. Nufrio, 341 N.J. Super. 548 (2001), he did not conclude "that the parties are unable to cooperate to the degree that they adversely affect their children's well-being. Both parties concede that [Paul] needs professional help, but they disagree as to the course of treatment." The judge also determined that the parties "ha[d] different approaches to medical treatment for [Alice,]" but that defendant "ha[d] not unreasonably interfered with [her] medical treatment." The judge concluded that plaintiff had failed to establish "changed circumstances" warranting modification of the DSA. As it relates to these issues, the terms of the September 29, 2017 order mirrored those contained in the judge's earlier June order.

Plaintiff filed a fourth motion less than one month later, seeking reconsideration, particularly as to her request for a plenary hearing and appointment of a GAL. Once again, the judge denied most of plaintiff's

requested relief, finding defendant's actions "constitute[d] a conservative, reasoned approach to medical decision-making." Nonetheless, the judge ordered that Paul begin psychiatric treatment with Dr. Jason A. Minion, who had conducted an evaluation of the child. The court's January 12, 2018 order provided:

    a. Both parties will provide Dr. Minion with written consent for [Paul] to begin psychiatric treatment. . . .

    b. Both parties will abide with Dr. Minion's determinations regarding [Paul]'s course of psychiatric treatment including, but not limited to, the dosage of medicine and the type of medicine. . . .

    c. If either party disagrees with Dr. Minion's course of treatment, they may obtain a separate expert, at their own cost, who will provide Dr. Minion with a medical reason as to why treatment should be modified. . . .

    d. If both parties disagree with Dr. Minion's treatment, they may jointly present their objections and request a modification. If [Paul] should change psychiatrists, the above detailed restrictions will continue. . . .

    e. Neither party shall attempt to create additional procedures beyond those explicitly created by Dr. Minion. . . .

    f. Neither party shall cancel an appointment as a result of his or her unavailability provided the other parent or another responsible adult is available to take [Paul]. . . .

    g. Each parent has the right to be present at Dr. Minion's office at the time of [Paul]'s appointment. . . .

7

h. Dr. Minion shall be provided with any collateral documentation he may request, which either party deems responsive, with a copy of same to be simultaneously provided to the other party.

Plaintiff filed an appeal from the September 2017 and January 2018 orders, which she later withdrew.

Events in the summer of 2018 spawned the orders at issue in these appeals. Dr. Minion, who had seen Paul at the Child Development Center (CDC), left for another position in July. Noting that another psychiatrist had not yet been appointed to replace him, Dr. Minion wrote that that Dr. Kathleen S. Fadden, a pediatrician at the CDC, could continue to see Paul, and the parties could seek out another child psychiatrist. Dr. Minion urged the parties' "prompt attention" to the matter.

However, by mid-August, despite receiving a list of potential child psychiatrists from Dr. Minion and Paul's autism coordinator, defendant refused to choose until he spoke with the doctor, who was on vacation. Dr. Fadden saw Paul in September 2018, with both parents present. Her notes reflect that prescribing sertraline, a drug Alice was taking, was discussed, but that "parent

8

did not want it prescribed – psychiatry consult discussed."[3]  Dr. Fadden diagnosed Paul with "[a]utism spectrum disorder associated with neurodevelopmental, mental or behavioral disorder, requiring substantial support[,] . . . [a]ttention deficit hyperactivity disorder (ADHD), . . . [and] [o]bsessive behavior . . . ."  The parties' conflicting interpretations of Dr. Fadden's recommendations led plaintiff to ask the doctor to clarify whether Paul would benefit from psychiatric treatment and a trial on sertraline.  Dr. Fadden's response was unequivocal:

> [Paul] has obsessive behavior that interferes with functioning that I do not think behavior therapy alone can treat at this point.  Since sertraline (which helps his sister) can help children, it can be attempted by a psychiatrist or by myself in conjunction with his psychotherapist.  For now, a [board certified behavior analyst] can use behavioral strategies for him to function in school and vocational programming with carry over to home.

In the interim, plaintiff had filed a fifth motion asking the court to appoint a GAL and order a psychiatrist to replace Dr. Minion.  Defendant again opposed the motion and filed a cross-motion seeking modification of parenting time and other relief.  In her reply certification, plaintiff highlighted "four significant

---

[3] The notes do not state which parent voiced opposition to prescribing the drug, but it is undisputed that the notes reflect defendant's position.

changes in circumstances" since the filing of her last motion, the most noteworthy of which was Dr. Minion's withdrawal from Paul's treatment. Additionally, plaintiff noted Paul's clinical social worker, Laura Roth, was terminating her sessions with the child for "personal reasons." Plaintiff enclosed an email from defendant to Ms. Roth, stating, "[i]f any document or statement from you ends up in [plaintiff]'s legal proceedings against me (even though you promised in writing not to get involved in legal proceedings), I will assume that we are free to subpoena you." Plaintiff asserted that Ms. Roth's "personal reasons" were a lack of "the necessary legal, financial[,] and emotional resources to deal with the [d]efendant."

Plaintiff asserted Dr. Fadden's recommendations, and defendant's refusal to accept them, were another changed circumstance warranting appointment of a GAL. Plaintiff attached the session notes and correspondence we discussed above. Finally, plaintiff described the results of recent behavioral testing performed on Paul by his school, and an escalating downward spiral in Paul's behavior at home and school.[4]

---

[4] Plaintiff also stated that defendant refused to consent to Dr. Sayyaparaju's recommended change in medication for Alice.

A third Family Part judge heard oral argument on plaintiff's motion and defendant's cross-motion over two days. Among other things, defense counsel disagreed with the judge's assertion that Paul "needs to have some psychiatric assistance at this . . . time," and, pointing to the language in the DSA, stated defendant was "the arbiter of the reasonableness" of all treatment for the children. Although the judge clearly signaled his intention to order a psychiatric evaluation of Paul and appointment of a psychiatrist for further treatment as necessary, the argument carried over to a second day, primarily to address defendant's request to modify parenting time.

During the second day of arguments, the judge indicated his intention to deny plaintiff's request to appoint a GAL because it would "interpose . . . another layer of decision-making in between the parents which further removes them from the decision making." He gave defendant an opportunity to select one of several psychiatrists whose names were on a list supplied by Dr. Minion to both parties. Defense counsel chose Dr. Pamela Moss, who was not on the list, but had treated Paul in the past. Plaintiff agreed and urged the judge to contact the doctor regarding the appointment.

The judge's December 5, 2018 order (December 2018 order) denied plaintiff's request to appoint a GAL but provided:

> The Court . . . appoints Dr. Pamela Moss . . . as [Paul]'s psychiatrist by consent of the parties. The parties shall forthwith contact Dr. Moss and pay the required fee and initiate therapy. . . . The parties shall execute written consent for [Paul] to begin psychotherapy. Both parties will abide by Dr. Moss's determinations regarding [Paul]'s course of treatment, including but not limited to, the type of medication and dosage of medication. A recommendation will be considered given, if the doctor suggests a specific course of treatment using language including but not limited to "recommends," "suggests," "you should consider," etc. If such recommendation is made, both parties must execute their consent for said treatment within [seventy-two] hours of notification thereof.

The order further provided, by consent, for the appointment of Dr. Susan Blackwell-Nehlig, Paul's "therapist at school" as his "psychologist/therapist for counseling outside the school," and applied all the "treatment protocols" applicable to Dr. Moss to Dr. Blackwell-Nehlig. The judge also granted defendant's request to modify his parenting time schedule with Paul, something to which plaintiff consented. A few days later, the judge notified the parties that Dr. Moss accepted the appointment, and the judge set the date for Paul's first session with the doctor.

Nevertheless, defendant sought to adjourn the first appointment because of his professional schedule. Defense counsel asked the court to intercede, because plaintiff had objected to re-scheduling. He also asked the judge to

"advise Dr. Moss she is able to freely speak with [defendant] prior to [the] appointment[.]"

However, the doctor wished to see the child alone on the first visit. Counsel forwarded the judge conflicting versions of defendant's interaction with the doctor's staff. Defense counsel urged the judge to permit rescheduling of the appointment so his client could be present. He wrote in a December 20, 2018 letter to the judge,

> In ongoing meetings with Dr. Moss, [defendant]'s presence may not be required due to the [c]ourt's order. However, this is [Paul]'s first appointment with Dr. Moss so it is crucial fairness and integrity of the process be provided to [defendant] and that he be permitted to attend, regardless as to whether or not either party is seen by Dr. Moss. He should be permitted to ensure [p]laintiff does not seize an unfair advantage by being present without him.

The judge ordered both parties to be present with counsel for a conference, which was eventually held on January 9, 2019.

In the interim, on December 20, 2018, Dr. Moss wrote to the judge declining the court's appointment "as it would be too disruptive to [her] practice[.]" Referencing two telephone conversations between defendant and her office, Dr. Moss wrote:

> During [defendant]'s conversations . . . he was verbally aggressive, demanding[,] and inappropriate. He,

13

without provocation[,] launched into demeaning and devaluing [plaintiff], for example, claiming she had a psychiatric disorder and insinuating ill will on her part. Despite being asked to stop this line of talk, he persisted. [Defendant] then demanded to speak with me prior to the evaluation and demanded the evaluation process be altered. He would not accept my instructions given to him by my secretary. [Defendant] was obstructionistic [sic] in the setting up of his son's evaluation.

Dr. Moss also refuted two specific assertions contained in defense counsel's initial letter to the court. She wrote that plaintiff "in no way influenced the scheduling process[,]" and, "at no time" had the doctor's office "suggest[ed] that [Dr. Moss] required [the] court['s] permission to speak with" defendant. The judge forwarded Dr. Moss's letter to the parties the day before the January 9 conference.

The judge began the conference by marking the above correspondences into evidence as court's exhibits. There was no objection by counsel. Moreover, defense counsel did not dispute the contents of Dr. Moss's letter. Instead, he attributed his client's behavior on the phone as "unfortunately the result of just being totally frustrated after dealing with this for two-and-a-half years." Noting Dr. Moss's appointment was at his suggestion, defense counsel admitted he "was very unhappy to have read [her] letter[,]" and thought "it was a bad day for [defendant] and frustrating." Defense counsel told the judge he was "not

14

opposed" to appointment of a GAL "acceptable to both sides[,]" but defendant lacked funds for the appointment. Counsel also posited Dr. Merritt A. Hubsher as an alternate psychiatrist.[5] Counsel requested that the court not make any changes to the "custodial arrangement as relates to legal or medical [decision-making] . . . without a hearing[.]" Plaintiff's counsel urged the court to give her client sole medical decision-making authority as to the children. She argued that the record was clear and no hearing was necessary.

Rejecting defendant's argument that the plaintiff needed to make another motion, or that the material in the record was "hearsay," the judge concluded defendant had obstructed necessary psychiatric treatment for Paul. The judge stated,

> [a]ll I have to do is read Dr. Moss'[s] letter . . . into the record, and say that's proof positive by the expert that you selected, the [p]laintiff agreed to, who previously treated P[aul] saying in [a] very significant . . . detailed manner that [defendant] is an obstructionist and that he abused her staff. He would not follow her protocols.

The judge found Dr. Moss's letter was an independent observation consistent with plaintiff's allegations regarding defendant's behavior. The judge

---

[5] Dr. Hubsher had seen Paul years earlier, but his suggestion of the possible use of medication resulted in defendant's refusal to consent to any further treatment by the doctor.

designated plaintiff "the parent of sole medical decision-making" for the children.  Plaintiff's counsel advised the judge it was acceptable for the court to designate Dr. Hubsher, and defendant concurred with that choice.

The court's January 9, 2019 order (the January 2019 order) appointed Dr. Hubsher as Paul's psychiatrist, and reiterated what constituted a "recommendation" from the doctor as set forth in the December 2018 order. The order designated plaintiff as sole medical decision-maker for the children "without any need for consent or approval from . . . [defendant] . . . as to any medical evaluations and treatment, including without limitation, prescribed medications."  Defendant filed a notice of appeal from the December 2018 and January 2019 orders (A-2106-18).

## B.

The filing of defendant's first appeal was not the end of the dispute in the Family Part, nor even the beginning of the end, but in Churchillian terms, it may be considered the end of the beginning of the controversy.  Dr. Hubsher declined the appointment, and plaintiff notified defense counsel that although another psychiatrist had been identified to evaluate and perhaps treat Paul, she would not identify the doctor.  Plaintiff's counsel sent defense counsel a questionnaire, which the doctor requested defendant complete, and warned, "[i]f [defendant]

16

attempts to contact the evaluator or otherwise thwart the evaluation, [plaintiff] will seek intervention of the court." Defense counsel objected, claimed none of the prior orders gave plaintiff authority to withhold the name of the doctor, and indicated defendant would not complete the form until he was provided with plaintiff's submissions to the doctor, the doctor's notes and the "reason and conditions of evaluation."

Defendant then filed an application for an order to show cause (OTSC) seeking to stay the January 2019 order pending appeal, a declaration that plaintiff had violated litigant's rights after Dr. Hubsher's declination of the assignment, and counsel fees. The judge entered an order on February 19, 2019, setting a return date of March 6, 2019, and a schedule for the parties to file additional papers.

On the return date, the judge identified two "baskets" of issues, i.e., defendant's request for a stay of the January 2019 order and plaintiff's selection of a replacement psychiatrist for Paul. As to the first, defendant argued the judge relied on hearsay in granting plaintiff sole decision-making authority, and there were genuine factual disputes which required a plenary hearing.

17

According to defendant, the judge should either grant a stay, or vacate the order and hold a plenary hearing.[6]

The judge expressed concern that staying the January 2019 order pending appeal would effectively deny Paul any treatment, since it was likely Paul would be eighteen before the appeal was decided. However, the judge found that defendant was entitled to know the identity of and interact with the replacement psychiatrist plaintiff selected, if a protocol was in place. The judge found it necessary to establish a protocol to ensure Paul's treatment would not be disrupted by the parents' disputes, while also ensuring the parents' right to know and participate in treatment that the doctor found appropriate. Concluding defendant failed to meet the standards for issuing a stay under Crowe v. De Gioia, 90 N.J. 126 (1982), and Garden State Equality v. Dow, 216 N.J. 314 (2013), the judge declined to stay or vacate the January 2019 order, but granted defendant a plenary hearing "for [t]he [c]ourt to determine whether or not the plaintiff should continue to have the status as the sole parent of medical decision-making authority."

---

[6] Citing an in-chambers, off-the-record conversation between counsel and the judge, defense counsel asserted that another judge should conduct the plenary hearing because the judge had already "pre-judg[ed]" the outcome.

A-2106-18T3

The judge's March 6, 2019 order (the March 2019 order) reflected this oral ruling, and also required plaintiff to disclose the identity of the "presently unnamed psychiatrist" consulted for Paul's potential treatment "once a protocol for parental contact and exchange of information/documentation between the parties and the psychiatrist has been established, either by . . . consent . . . or by further [o]rder of the [c]ourt following" a March 27 case management conference. The order also required plaintiff to provide defense counsel with copies of everything "sought by, and provided to, the potential successor psychiatrist[.]"

Defense counsel notified the judge that he objected to the court's consideration of a protocol for contact and information exchange because plaintiff never filed a cross-motion to the OTSC. Counsel also argued the judge lacked jurisdiction to schedule or hold a plenary hearing, conduct case management conferences, or establish any protocol because of the pending appeal. See R. 2:9-1(a) (generally vesting jurisdiction with the appellate division upon filing an appeal). Defense counsel reiterated that the judge should recuse himself from any further proceedings and requested that the judge file an amended order and statement of reasons regarding his exercise of continued jurisdiction.

We denied defendant's request to file an emergent motion for a stay of the March 2019 order, after which, defendant filed a notice of appeal of the March 2019 order (A-2981-18).

C.

Within days thereafter, defendant filed a motion in the Family Part seeking vacation of the March 2019 order and the judge's recusal. Defense counsel's certification claimed that in chambers, during the March 6 proceedings, the judge raised his voice and told defense counsel that "if [they] wanted a hearing, [they] would get [their] hearing and [they] would lose." Three days later, defendant filed an OTSC seeking a stay of the March 2019 order pending appeal, or, alternatively, vacation of the order. Defense counsel wrote to the vicinage assignment judge and presiding judge of the Family Part, seeking their intercession to "correct the procedural anomaly caused by the" March 2019 order, which he alleged was entered despite the court's lack of jurisdiction. In subsequent correspondence, defense counsel stated that defendant never requested a plenary hearing while the appeal was pending, and that to the extent the judge understood him to have made such a request, it was withdrawn.

On March 27, the parties appeared before the judge for the scheduled case management conference and defendant's OTSC. The judge interpreted our

rejection of defendant's request for emergent relief as implicit approval of his ability to move forward. He denied the OTSC but adjourned any further action until he decided defendant's recusal motion and conducted a case management conference on April 12. On April 5, 2019, again applying the <u>Crowe</u> standards, the judge entered an order (the OTSC order) and written statement of reasons denying a stay of further proceedings in the Family Part pending appeal. Defendant again sought our emergent intervention to stay the March 2019 order pending appeal, which we again denied. Defendant's application to the Supreme Court was similarly denied.

The parties and counsel appeared before the judge on April 12. The judge denied defendant's motion for recusal. Defense counsel affirmed that defendant "ha[d] opted not to go forward with the plenary hearing[.]" Defendant initially objected to discussing protocols for information sharing and contact with Paul's proposed psychiatrist because the judge "lack[ed] subject matter jurisdiction[,]" and defense counsel withdrew any prior proposals regarding a protocol. The judge, citing our and the Supreme Court's prior refusals to intervene on an emergent basis, disagreed. Not having a proposed protocol from defendant, the judge adopted plaintiff's protocol, finding it allowed for defendant's knowledge and active involvement in the children's health and welfare.

A-2106-18T3

On April 17, 2019, the judge entered an order denying defendant's recusal motion (the recusal order) and a case management order (the CM order). The CM order included plaintiff's proposed protocol. We denied defendant's application for an emergent stay of the orders, as did the Supreme Court. Defendant filed a notice of appeal of the OTSC order, recusal order, and CM order (A-3513-18).[7]

## II.

In A-2106-18, defendant contends the judge misconstrued defendant's rights under the DSA and prior orders by appointing Dr. Moss as Paul's psychiatrist because Dr. Minion never recommended that Paul needed psychiatric treatment. Defendant alternatively argues that the judge could not have appointed a psychiatrist, or modified defendant's rights under the DSA regarding medical decision-making, without holding a plenary hearing because genuine material facts existed. Additionally, defendant contends that the judge improperly shifted the burden of proof to defendant during the proceedings leading to the December 2018 and January 2019 orders, relied on inadmissible

---

[7] We need not detail the motion practice before our court that both parties pursued, except to say that we ordered consolidation of the three appeals, denied defendant's motion for summary disposition in A-2981-18, and denied plaintiff's motion to dismiss the appeals and/or remand the matters to the trial court.

evidence to eliminate defendant's medical decision-making authority, and denied defendant due process, because defendant had inadequate notice that the judge would consider modification of the DSA or define what a doctor's "recommendation" meant. Defendant also argues that the judge never addressed the statutory best interests' factors contained in N.J.S.A. 9:2-4 prior to modifying the DSA, and the judge exerted duress and undue influence upon defendant to obtain his agreement to Dr. Moss's appointment. We reject all these contentions and affirm the December 2018 and January 2019 orders.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). The trial judge's factual findings and legal conclusions are not disturbed unless we are convinced they are "so manifestly unsupported by or inconsistent with" the evidence presented. Cesare, 154 N.J. at 412. "A more exacting standard governs our review of the trial court's legal conclusions[,] . . . [which] we review . . . de novo." Thieme, 227 N.J. at 283 (citing D.W. v. R.W., 212 N.J. 232, 245–46 (2012)).

Initially, it is defendant who misconstrues the terms of the DSA and prior orders regarding whether the court had already decided Paul needed psychiatric treatment. Contrary to defendant's assertions, the DSA did not give him carte blanche to reject medical treatment of whatever sort for the children. He was not, as defense counsel asserted at one of the hearings, the final "arbiter" of conflicts that arose regarding medical treatment.

The DSA gave defendant "the option to determine the reasonableness and necessity of any treatment" for the children, but it also provided that he would "not unreasonably withhold his consent to such treatment." Plaintiff's incessant motion practice was an effort to demonstrate that defendant, not plaintiff, was violating the terms of the DSA. Defendant points to prior orders entered by the first two judges to demonstrate they rejected plaintiff's efforts and reaffirmed his authority to categorically reject treatment for the children. That is not so.

Although the March 2017 decision made by the first judge denied plaintiff sole decision-making authority, it reflects the judge's rejection of defendant's assertion that Alice did not need any medical intervention and that plaintiff's home environment was the cause of Alice's alleged medical or psychiatric conditions. Indeed, the first judge ordered Alice be evaluated by Dr.

Sayyaparaju, whose report clearly recommended treatment and medication to address her conditions.

So, too, the second judge's January 12, 2018 order rejected defendant's assertion that Paul did not need psychiatric treatment, but rather explicitly determined that both parties were to "provide Dr. Minion with written consent for [Paul] to begin psychiatric treatment." Defendant contends Dr. Minion's final correspondence, with the suggested referral to Dr. Fadden, who was not a psychiatrist, was an implicit determination that Paul did not need psychiatric care. Not only is that a strained interpretation of Dr. Minion's suggestion that the parties give their "prompt attention" to selection of another psychiatrist and his forwarding of a list of possible doctors, it ignores the substance of Dr. Fadden's letter, which clearly indicated Paul needed psychiatric treatment.

In short, the third judge, whose orders we review, neither misconstrued the prior orders or the terms of the DSA in entering the December 2018 order, nor was he required to hold a plenary hearing as to whether Paul needed psychiatric care. The prior order clearly said he did, and it required the parties to provide their consent and appointed Dr. Minion to evaluate and provide the treatment. Dr. Minion's withdrawal did not create a factual dispute as to whether Paul needed treatment. Defendant's claim that he agreed under duress to Dr.

A-2106-18T3

Moss's appointment because the judge exerted undue influence lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Defendant's challenge is more accurately aimed at the judge's decision to modify the DSA and provide plaintiff with sole medical-decision making authority via the January 2019 order. Initially, we recognize that the parties' agreement may be modified if the party seeking modification shows both changed circumstances, and the agreement is no longer in the best interests of the child. Finamore v. Aronson, 382 N.J. Super. 514, 522–23 (App. Div. 2006); Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003). The change in circumstances must "affect the welfare of the child[]." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citations omitted).

"[A] plenary hearing is . . . important when the submissions show there is a genuine and substantial factual dispute regarding the welfare of children." J.G. v. J.H., 457 N.J. Super. 365, 372 (App. Div. 2019) (quoting K.A.F. v. D.L.M., 437 N.J. Super. 123, 138 (App. Div. 2014)). We review the judge's decision to grant or deny a plenary hearing for an abuse of discretion, with deference to the Family Part judge's expertise. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

Defendant contends there was a factual dispute requiring the judge to have conducted a plenary hearing about the representations contained in Dr. Moss's letter prior to entry of the January 2019 order. However, defense counsel never contested the facts contained in Dr. Moss's letter. He never denied that his client had in fact been abusive toward the doctor or her staff. Instead, he told the judge defendant's conduct was the result of "frustrat[ion]." We agree with the judge that there was little to warrant a plenary hearing at that moment in time. The judge was rightly focused on providing Paul with psychiatric treatment, something that ceased when Dr. Minion withdrew many months earlier.

The record fully supports the judge's conclusion on January 9, 2019, that the joint decision-making envisioned by the terms of the DSA was no longer in the children's best interests. We acknowledge that the judge did not "specifically place on the record the factors which justif[ied] any custody arrangement not agreed to by both parents." N.J.S.A. 9:2-4; see also Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). However, the court clearly had the authority and "obligation to protect children enmeshed in parental disputes." Milne v. Goldenberg, 428 N.J. Super. 184, 200 (App. Div. 2012) (citing Vannucchi v. Vannucchi, 113 N.J. Super. 40, 47 (App. Div. 1971)). As we held in the broader context of joint legal custody, the prime criteria for such a joint relationship "centers on the ability of

th[e] parents to agree, communicate, and cooperate in matters relating to the health, safety[,] and welfare of the child[,] notwithstanding animosity or acrimony they may harbor toward each other." Nufrio, 341 N.J. Super. at 550.

The record clearly supported the judge's conclusion that joint decision-making was no longer viable, and that plaintiff had demonstrated a significant change of circumstances affecting the welfare of the children. The January 2019 order was an attempt by the judge to immediately address Paul's urgent needs, and we cannot conclude that the remedy — giving plaintiff sole decision-making authority — was an abuse of the judge's discretion.

We also reject defendant's other arguments challenging the December 2018 and January 2019 orders. Defendant contends the judge shifted the burden of proof to him to prove that Paul did not need psychiatric care instead of requiring plaintiff to prove the child did. As already noted, the second judge's January 2018 order clearly provided that Paul was to receive psychiatric care, and defendant was required to consent to the treatment, including medication.

We are also unpersuaded by defendant's contention that his due process rights were violated because he was not on notice that his joint decision-making rights were at risk. Plaintiff's motion that led to the December 2018 order sought appointment of a GAL and a replacement psychiatrist for Paul. During the oral

argument on the motion, the judge clearly indicated that while he was not going to grant that relief at that time, he was going to require appointment of a replacement for Dr. Minion, rejecting defendant's arguments to the contrary. The judge accepted defendant's recommendation to appoint Dr. Moss. In colloquy with counsel, the judge warned that continued inability to cooperate on issues regarding the children's medical needs could result in the appointment of one of the parties as sole decision-maker.

As already noted, when the parties reconvened on January 9, 2019, much had occurred in the interim. Defendant was not ignorant of those events, because defense counsel had corresponded with the judge, urging re-scheduling of Paul's first appointment because of defendant's business schedule. Counsel represented that plaintiff's objection to re-scheduling required the court's intervention. Dr. Moss's letter, however, refuted this claim. Moreover, defense counsel's letter stressed the importance of his client's presence at the first session and his client's opposition to plaintiff obtaining any "unfair advantage" by defendant's absence. There is no dispute in the record that the doctor's policy was to see Paul alone, without either parent.

Defendant was aware of all this before receiving a copy of Dr. Moss's letter the day before the January hearing. We reject any claim that he lacked

notice, or that plaintiff's failure to file yet another motion was necessary to provide adequate due process to defendant. The Family Part has broad equitable powers to enforce its own orders. Sagi v. Sagi, 386 N.J. Super. 517, 526 (App. Div. 2006). The essence of the December 2018 order was to compel Paul's continued psychiatric treatment, and the January 2019 order was the judge's reasoned attempt to enforce that earlier order.

To the extent we have not specifically addressed defendant's other arguments regarding the December 2018 and January 2019 orders, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm in A-2106-18.

III.

The March 2019 order resulted from defendant's application for an OTSC seeking a stay of the court's earlier orders pending appeal. Shortly before the return date, plaintiff's counsel indicated a new, unnamed psychiatrist might be willing to treat Paul and requested defendant complete a questionnaire in advance of any evaluation, which he refused to do. Counsel represented that the unnamed psychiatrist saw Paul, made an initial evaluation and recommended further testing. She clearly stated that there would be no medications prescribed "until after the evaluation is fully completed." As a result, defense counsel wrote

to the judge, requesting an expedited hearing on the OTSC "before implementation of this treatment[,]" citing plaintiff's "aggressive, secretive fashion" in securing psychiatric treatment with a "doctor [who] is not [c]ourt-[o]rdered." As noted, the judge denied defendant's request for a stay and the March 2019 order required plaintiff to provide defendant with the name of the psychiatrist, subject to adoption of a protocol for information sharing. The judge also ordered a plenary hearing "to determine whether [p]laintiff should remain sole parent of medical decision-making authority[.]"

Defendant's challenges to the March 2019 order are two-fold. He argues that the judge lacked jurisdiction while his appeal was pending to order a protocol for the parental exchange of information regarding the then unnamed psychiatrist plaintiff had consulted to treat Paul, or to order a plenary hearing. Defendant also contends that his due process rights were violated because he was not provided adequate notice that the court would make these substantive rulings. We reject these claims and affirm.

"[A]s a general rule, once an appeal is filed, the trial court loses jurisdiction to make substantive rulings in the matter." McNair v. McNair, 332 N.J. Super. 195, 199 (App. Div. 2000) (citing Rolnick v. Rolnick, 262 N.J. Super. 343, 365–66 (App. Div. 1993)). With the exception of clerical errors, the

trial court may not reconsider or amend or modify its judgment once an appeal is filed. Kiernan v. Kiernan, 355 N.J. Super. 89, 92 (App. Div. 2002). However, "[t]he rules of court nevertheless confer authority upon the trial court to continue to deal with the matter in limited ways. The trial court, for example, has continuing jurisdiction to enforce judgments and orders notwithstanding that they are being challenged on appeal." McNair, 332 N.J. Super. at 199 (citing R. 2:9-1(a); R. 1:10).

Here, the provisions of the March 2019 order compelling plaintiff to provide information to defendant about the unnamed psychiatrist, subject to agreement on a protocol, were intended to enforce the court's earlier December 2018 and January 2019 orders that re-initiated Paul's previously ordered psychiatric treatment. Despite the pending appeal, the judge had jurisdiction to enforce the prior orders.

The judge also was attempting to address concerns raised by defense counsel about plaintiff's lack of transparency regarding the doctor's identity. He ordered plaintiff to furnish defendant with the information after the parties adopted consensual protocols for information sharing. This provision was a reasonable attempt to address defendant's concerns while at the same time enforcing the orders providing Paul with necessary psychiatric care.

A-2106-18T3

Whether the judge's decision to order a plenary hearing exceeded the limits of his jurisdiction need not be addressed because the issue is moot. "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) (citing Jackson v. Dep't of Corr., 335 N.J. Super. 227, 231 (App. Div. 2000)). "Courts normally will not decide issues when a controversy no longer exists, and the disputed issues have become moot." Ibid. (citing DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring)).

No plenary hearing took place because defendant made clear that his prior request for a plenary hearing was conditioned on the judge vacating the orders already on appeal. Defendant subsequently affirmed that he did not wish to proceed with a plenary hearing while the appeal was pending, and none took place. This was reflected in a subsequent order. The issue is moot.

We affirm the March 2019 order, the subject of A-2981-18.

IV.

Defendant contends the judge lacked jurisdiction to enter the CM order because of the pending appeal. He also argues that the judge's denial of

defendant's recusal motion, or his refusal to appoint a three-person panel to hear the motion, see N.J.S.A. 2A:15-50, requires reversal.[8] We again disagree.

The CM order implemented a protocol for the scheduling of medical appointments for the children, attendance by the parties at those appointments, the parties' communication with the medical provider and re-affirmed plaintiff's sole medical-decision making authority. For the reasons already expressed, the judge did not lack jurisdiction to implement his prior orders through entry of the CM order simply because defendant's appeal of those prior orders was pending.

Turning toward the recusal motion, we set some parameters for our review. Rule 1:12-2 provides, "[a]ny party, on motion made to the judge before trial or argument and stating the reasons therefor[e], may seek that judge's disqualification." The motion may be granted where the judge "has given an opinion upon a matter in question in the action[,]" R. 1:12-1(d), or for any

_____

[8] Although the OTSC order entered on April 5, 2019, which denied defendant's request for a stay pending appeal, is contained in the notice of appeal filed in A-3513-18, defendant makes no specific argument about the order in his brief. "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (citing Jefferson Loan Co. v. Session, 397 N.J. Super. 520 (App. Div. 2008)). To the extent defendant includes the OTSC order's denial of a stay pending appeal as included in his general argument that the judge improperly exercised jurisdiction while the appeal was pending, we address the contention in the next paragraph.

"reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel . . . to believe so." R. 1:12-1(g).

Motions for recusal must be made "directly to the judge presiding over the case." State v. McCabe, 201 N.J. 34, 45 (2010) (citing R. 1:12-2; Magill v. Casel, 238 N.J. Super. 57, 63 (App. Div. 1990)). "They are entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." Ibid. (citing Panitch v. Panitch, 339 N.J. Super. 63, 66, 71 (App. Div. 2001)).

> It is unnecessary to prove actual prejudice on the part of the court, but rather "the mere appearance of bias may require disqualification. . . . However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable."
>
> [Pannitch, 339 N.J. Super. at 67 (quoting State v. Marshall, 148 N.J. 89, 279 (1997)).]

The basis of defendant's motion was the judge's allegedly improper comments during the in-chambers conference on March 6, 2019. Defendant claimed the judge 1) improperly attempted to argue the merits of the appeal of the January 2019 order; 2) became agitated and raised his voice at defense counsel; 3) gave his opinion on a matter before him by stating that if defendant wanted a plenary hearing as to medical decision-making power, he could have one, but he would lose. This was countered by plaintiff's counsel's certification

in opposition to the motion, which agreed that the judge raised his voice and said defendant would likely lose a plenary hearing. Counsel then clarified the judge said that because defendant had repeatedly "failed to provide a proffer of what evidence [he] would produce on [defendant's] behalf that is different or contrary to what was already presented and considered."

In considering the motion, the judge denied any bias against defendant. He reiterated the bases for his decisions to that point. The judge acknowledged telling defense counsel that he would likely lose the plenary hearing he was then requesting because defendant had not offered any evidence that disputed the facts regarding his interactions with Dr. Moss. The judge reiterated his sole purpose in granting plaintiff sole decision-making authority was to get Paul the medical treatment he desperately needed.

Intemperate comments by the judge, indeed, comments contrary to the Judicial Code of Conduct, "do not, by themselves, necessarily equate to bias." Id. at 68 (citing State v. Leverette, 64 N.J. 569, 571 (1974)). Indeed, we think it is significant that even after he provided plaintiff with sole medical decision-making authority, the judge entered orders that compelled her to provide defendant with information and established protocols to assure defendant would have reasonable input in the medical care of the parties' children.

A-2106-18T3

We also do not think the judge was prejudging the results of a future plenary hearing. As we already expressed, defendant failed at the time, and has continued to fail in his filings before us, to demonstrate genuine factual disputes exist regarding his interactions with Dr. Moss. Nor has he raised a genuine factual dispute about the medical treatment recommended for Paul at the time.

N.J.S.A. 2A:15-50 permits a judge in his or her discretion to "appoint [three] disinterested persons" to consider his or her disqualification in an action for, among other things, having "given his [or her] opinion upon a matter in question in such action[.]" N.J.S.A. 2A:15-49(c). Defendant requested this relief as alternative relief in his recusal motion. The statute may be invoked "[i]n the event that a judge himself feels in his discretion that it would be better for others to hear and decide a motion to recuse[.]" Magill, 238 N.J. Super. at 64. The statute by its terms is addressed to the court's discretion, and we cannot conclude, for the reasons already stated, that the judge mistakenly exercised his discretion.

We affirm the CM order and the recusal order, the subjects of A-3513-18.

V.

Finally, defendant argues the judge erred by not awarding him counsel fees incurred as a result of all the proceedings, and that he is entitled to fees on

appeal.  Given our conclusions, the argument lacks sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in A-2106-18; A-2981-18; A-3513-18.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION